# Tidwell *v.* H. H. Hitt Lumber Co., *et al.*

### Bill for Injunction.

(Decided December 21, 1916.   73 South. 486.)

1. **Injunction; Repeated Trespasses; Cutting Timber; Relief.**—One who owns land and is in possession thereof is entitled to an injunction restraining one claiming the right to the timber, who has already entered and cut some of the timber, from carrying out his threat to cut all of the timber, both to prevent multiplicity of suits to recover for each trespass and to prevent irreparable injury, even under the strict definition of that term as "great and irremediable mischief which damages could not compensate because it reaches to the very substances and value of the estate and goes to the destruction of it in the character in which it is enjoyed."

2. **Same; Solvency of Respondent.**—The complainant is entitled to an injunction to restrain the cutting of all the timber from his land, although the defendant is financially able to respond fully in damages; the solvency or insolvency of the respondent being material only when the injury is not irreparable but may be adequately estimated and compensated for in money.

(Anderson, C. J., and McClellan, J., dissent.)

APPEAL from Limestone Chancery Court.

Heard before Hon. JAMES E. HORTON, JR.

Bill by C. Wesley Tidwell against the H. H. Hitt Lumber Co. and others to enjoin trespass to land. Decree for respondents and complainant appeals. Reversed and remanded.

W. R. WALKER, for appellant.   CALLAHAN & HARRIS, for appellee.

[Tidwell v. H. H. Hitt Lumber Co., et al.]

SAYRE, J.—The facts shown by the bill in this cause may be stated as follows: Complainant, on the consideration of a large sum paid and to be paid, purchased the land from one Puryear on August 28, 1913, taking a deed with full warranty. This deed contained no reservation or exception of trees growing upon the land. Puryear had purchased the same land from one Ragsdale on March 19, 1912. The record of the conveyance from Ragsdale to Puryear is referred to but no copy thereof is exhibited with the bill. Complainant's deed shows that he was to have possession on or before January 1, 1914, and the averment of the amended bill is that he entered into possession on or about that date and has been continuously in possession ever since. The bill, filed July 15, 1915, avers that defendant company, notwithstanding it had been notified by complainant not to enter upon the land or cut any timber therefrom, did, on the day before its filing, enter upon the land and begin to cut timber, and has informed complainant that it intends to cut from the land all timber thereon, and upon information and belief it avers that Ragsdale sold the timber rights on said land to defendant, but that by the terms of that contract there was a time limit within which the timber was to be removed from the land, and that said time limit expired on or about January 1, 1913, whereupon all rights, licenses, and privileges of the defendant ceased and came to an end. Likewise upon information and belief it is averred that Puryear in January, 1913, made a contract with defendant, by the terms of which, in consideration that defendant would ditch and drain the land, defendant was to have 90 days in which to do the ditching and draining and to remove the timber therefrom, but that, by mistake, the contract was made to read that defendant should have 90 days from ditching and draining the land within which to remove the timber; and, further, if there was no mistake, defendant had only a reasonable time in which to ditch and drain the land and remove the timber, and defendant made no effort within a reasonable time to carry out the agreement, but did enter on the date aforesaid and begin to cut the timber. Complainant avers that he had no notice of said contracts at the time of his purchase; that defendant had both of them in its possession, wherefore he is without accurate information as to their contents, and must rely upon a discovery to prove their terms, conditions, and contents, to which end apt interrogatories are incorporated in the bill; that said contracts are

clouds upon his title. Complainant prayed and procured the issuance of a temporary injunction. The prayer for final relief is that the Puryear contract be reformed, that all rights of defendants under the contract be decreed to have expired, that defendant be permanently enjoined from entering. upon said lands and cutting any timber therefrom, and for an accounting for the damages already done to the land. The cause being submitted for decree on demurrer to the bill and on motion to dissolve the injunction, the demurrer was sustained and the injunction dissolved. Complainant appeals.

(1) It is to be noted, in the first place, that complainant's purpose in this cause is not to have a disputed question of legal title to and possession of land determined on a bill to restrain alleged trespasses, as was the case in *Kellar v. Bullington,* 101 Ala. 267, 14 South. 466, for, as we have seen, complainant avers his title to and possession of the land—to speak of the land as distinguished from the trees growing upon it. And, whatever may ultimately prove to be the fact in respect of the title to the trees, complainant is in possession of them also under a claim of ownership. The question of controlling importance at this time is whether, in the circumstances stated, complainant is entitled to injunctive protection against the repeated trespasses threatened by defendant, its officers and agents, involving a complete destruction of the timber standing on the land. The chancellor makes it clear that he was influenced to decree against the bill by the opinion of this court in *Hitt Lumber Co. v. Cullman Property Co.,* 189 Ala. 13, 66 South. 720. The decision in that case appears to have been determined by *Deegan v. Neville,* 127 Ala. 471, 29 South. 173, 85 Am. St. Rep. 137, and some observations of Chancellor Kent in *Jerome v. Ross,* 7 Johns Ch. (N. Y.) 315; 11 Am. Dec. 484. We will, as briefly as may be, state the result of our further consideration of these cases.

Recurring to *Kellar v. Bullington,* to which we referred in the outset, and which was quoted in *Hitt Lumber Co. v. Cullman Property Co., supra*—in that case the defendants were in possession of the locus in quo, a quarry, working the same under a bona fide claim of ownership, when complainant acquired his title by a homestead entry; thereafter complainant established his homestead upon the land, about a quarter of a mile from the quarry, and then, without concurrently bringing an action at law to try the conflicting claims of title—pending which he would

have been entitled to an injunction (*Hamilton v. Brent Lumber Co.*, 127 Ala. 78, 28 South. 698)—complainant filed his bill to enjoin permanently the further quarrying of stone, and for an account and recovery of the value of the stone taken. While holding on the evidence, it is true, that, if every yard of stone were removed from complainant's land, payment to him of the fair value thereof in money, would have afforded ample and adequate redress, the court, observing that the bill seemed to rest for its equity upon the mere conclusions of the pleader that a resort to equity was necessary to prevent irreparable injury and a multiplicity of suits, rather than any statement of facts to that effect, and noting that neither the bill nor the proof showed any displacement or disturbance of the actual adverse possession by which defendants held the quarry—in these circumstances the court appears to have laid the stress of its opinion upon the fact that defendants had a constitutional right to have the validity of their claim of title tried in an issue to the country, before being disturbed in their possession and use of the premises.

The decision in *Deegan v. Neville* rested upon peculiar facts. Complainant had a mere chattel interest in the premises he sought to have protected by injunction. He held the premises under the defendant, and only 37 days of his leasehold term remained at the time he filed his bill. He occupied the premises as a barroom "with yard privileges," and the trespasses most grievously complained of were alleged to have been committed upon the yard, making the use of it dangerous. Defendant was erecting a building upon his adjoining premises from which, day after day, his agents dropped broken bricks, dust, and other debris upon complainant's yard. The court found upon the evidence that the only use complainant made of the yard was to traverse it in going to and from a water-closet that did not belong to him under the terms of his lease, and in which he had no exclusive right, if he had any at all, as the court said. On this peculiar combination of facts, the court excluded two alleged grounds of equitable jurisdiction by saying that, "to make the injury or trespass a continuing one, it must be of such a character as that its recurrence is not dependent upon any act to be done by any person," and further that, to bring a case within the rule upon which equity acts for the prevention of a multiplicity of suits, "it must be shown that there are different persons assailing the

same right 'and each standing on his own pretensions,' " herein harking back to *Jerome v. Ross, supra.* In the end the court held that complainant might have adequate compensation in an action at law for a breach of defendant's covenant for quiet enjoyment, and dissolved the preliminary injunction which had been granted in the court below.

From this statement of *Kellar v. Bullington* and *Deegan v. Neville,* it will be seen, we think, that the rulings in those cases, when due regard is had to the facts involved, may be thoroughly well justified without affirming that the owner in undisputed possession of land must stand by while a valuable part of his estate is converted into mere chose in action by the repeated trespasses of a single person, or his agents, or that equity in such case is impotent to afford preventive relief.

In *Hitt Lumber Co. v. Cullman Property Co.,* the court, after calling attention to the generality, vagueness, and uncertainty of the bill in various particulars, quoted from *Kellar v. Bullington, Deegan v. Neville,* and *Jerome v. Ross,* and held that a demurrer to the bill—taking the ground, among others, that the averments by which it invoked the power of equity to prevent repeated trespasses and a multiplicity of suits were mere conclusions of the pleader—should have been sustained, expressing, the while, its unwillingness to say that the bill was incapable of amendment so as to give it equity.

These cases of ours all repeat some general expressions found in *Jerome v. Ross.* Looking to the specific facts with which Chancellor Kent was dealing in that case, it occurs to us at this time that his opinion was not so entirely opposed to equitable relief in the circumstances presented by the bill now before us as has been generally supposed, though it must be conceded that, as Mr. Pomeroy observes, its general tendency was to narrow the jurisdiction of equity to cases, of comparatively infrequent occurrence, in which the trespasses are of extraordinary and specially aggravated nature. Attention has been called to the fact that, a short while before the decision in *Jerome v. Ross,* Chancellor Kent had decreed an injunction against the cutting of wood and timber under a claim of right to estovers. In that case, however, the claim of the defendant had been decided against him in one action at law, another was pending, and the relief was specifically put upon the necessity of preventing a multiplicity of suits. The Chancellor cited cases showing the habit of the English court to

grant injunctions in cases of trespass as well as waste, but he did not think it necessary to go that far in the case before him.—*Livingston v. Livingston*, 6 Johns. Ch. (N. Y.) 497, 10 Am. Dec. 353.

Whatever may be the precise purport of the opinion in *Jerome v. Ross*, as applied to cases like this, looking over the modern cases on the subject, it is impossible to avoid the very definite conclusion that the courts of this day and time, while adhering to the fundamental doctrine that irreparable injury must be shown, have distinctly moved away from some propositions there laid down. We cannot do better than to quote Mr. Pomeroy. He says: "The jurisdiction of equity to restrain continuous or repeated trespasses rests on the ground of avoiding a repetition of similar actions. It is a basis of jurisdiction that is frequently found in cases where the injury is also irreparable. Very often, indeed, the injury is irreparable only because it is continuous or repeated, when it would not be if temporary, and in such cases the injunction will issue as a matter of course. For the further discussion of this subject, it will be convenient to consider: First, the cases in which the injury is the result of a single act, or set of acts, of the defendant, which afterwards operate by virtue of natural laws to produce the injury; and, second, the cases in which there are several or many acts of the defendant or defendants which give rise to as many different causes of action. The distinction is roughly that between continuing and repeated trespasses. * * * When the trespasses complained of are caused by the separate acts of individuals, a multiplicity of suits may be caused to plaintiff either because the defendants are numerous or because a single defendant does the same or similar acts repeatedly. The principle involved in all such cases is the same, and injunction should issue. And when the basis of the multiplicity of suits which plaintiff fears is that the defendants are numerous, all authorities agree in granting the injunctions. But when it is the case of a single defendant, who, by repeating his acts of trespass, makes it necessary for plaintiff to pursue his legal remedy only by a succession of actions, the decisions are curiously diverse. It is held, in a small group of cases"—among which the author cites *Jerome v. Ross* and *Deegan v. Neville*—"that this is not the kind of multiplicity of suits which equity enjoins, but that instead an injunction is proper only when different persons assail plaintiff's right.

[Tidwell v. H. H. Hitt Lumber Co., et al.]

The other view, and the one sustained alike by the weight of authority and by principle, is that, if a defendant manifests a purpose to persist in perpetrating his unlawful acts, the vexation, expense, and trouble of prosecuting the actions at law make the legal remedy inadequate, and justify a plaintiff in coming into equity for an injunction. None of the cases show a tendency to make the seriousness of the damage the criterion."—5 Eq. Jur. § 496, citing many cases.

The author observes that, if plaintiff's legal remedy may be vexatious, harassing, and hence inadequate, when he recovers substantial damages, still more would it seem to be so when his recovery is only nominal.

In *Jerome v. Ross, supra,* Chancellor Kent defined "irreparable" as the "great and irremediable mischief, which damages could not compensate, because the mischief reaches to the very substance and value of the estate, and goes to the destruction of it in the character in which it is enjoyed." It is not easy to see why the bill in this case does not measure up to that standard. If a man has a woodland, who will say that he ought not to be permitted to keep it substantially intact, whether for profit or pleasure? Trees cut down do not grow again, and nature requires an average lifetime in which to replace them. We do not speak of single or occasional trespasses which are temporary in their nature and effect. We quote again from Mr. Pomeroy:

"If a trespass to property is a single act, and is temporary in its nature and effects, so that the legal remedy of an action at law for damages is adequate, equity will not interfere. * * * All the cases, English and American, have professed to adopt the inadequacy of legal remedies as the test and limit of the injunctive jurisdiction; but, in applying this criterion, the modern decisions, with some exceptions among the American authorities, have certainly held the injury to be irreparable and the legal remedy inadequate in many instances and under many circumstances where Chancellor Kent would probably have refused to interfere. It is certain that many trespasses are now enjoined which, if committed, would fall far short of destroying the property, or of rendering its restoration to its original condition impossible. The injunction is granted, not merely because the injury is essentially destructive, but because, being continuous or repeated, the full compensation for the entire wrong cannot be obtained in one action at law for damages. While the same for-

mula is employed by the courts of equity in defining their juris-
diction, the jurisdiction itself has practically been enlarged;
judges have been brought to see and acknowledge—contrary to
the opinion held by Chancellor Kent—that the common-law theory
of not interfering with persons until they shall have actually
committed a wrong is fundamentally erroneous, and that a rem-
edy which prevents a threatened wrong is in its essential nature
better than a remedy which permits the wrong to be done and
then attempts to pay for it by the pecuniary damages which a
jury may assess. The ideal remedy in any perfect system of
administering justice would be that which absolutely precludes
the commission of a wrong, not that which awards punishment
or satisfaction for a wrong after it is committed."—4 Eq. Jur.
§ 1357.

And again the same author says that the cutting or destruc-
tion of timber in England, and generally in America, is a form
of trespass that is generally considered as irreparable.—5 Eq.
Jur. § 495. And in Story's Eq. Jur. §§ 928, 929, it is said: "For-
merly indeed courts of equity were extremely reluctant to inter-
fere at all, even in regard to cases of repeated trespasses. But
now there is not the slightest hesitation if the acts done or threat-
ened to be done to the property would be ruinous or irreparable,
or would impair the just enjoyment of the property in future.
*  *  *  In short, it is now granted in all cases of timber, coals,
ores, and quarries, where the party is a mere trespasser, or
where he exceeds the limited rights with which he is clothed,
upon the ground that the acts are, or may be, an irreparable
damage to the particular species of property."

In *Lyon v. Hunt,* 11 Ala. 295, 46 Am. Dec. 216, this court
referred with apparent approval to *Livingston v. Livingston,*
where it was said: "This protection is now granted in the case
of timber, coals, lead ore, quarries, etc."

In *Hamilton v. Brent Lumber Co., supra,* where the title was
in dispute, but defendant was in actual possession, the injunction
granted in the court below, restraining trespasses consisting in
the cutting and removal of trees, was by decree of this court con-
tinued until the complainant should have a reasonable time to
bring its action at law to recover the realty in controversy. The
same course was followed in the similar case of *McMillan v.
Aiken,* 182 Ala. 303, 62 South. 519.

[Tidwell v. H. H. Hitt Lumber Co., et al.]

In *Pardee v. Camden Lumber Co.*, 70 W. Va. 68, 73 S. E. 82, 43 L. R. A.. (N. S.) 262, the Supreme Court of West Virginia, departing from its own previous decisions, along with an able discussion of the law, has made an interesting statement of the conditions obtaining in the early history of this country, in which small importance was attached to the destruction of forests and standing trees, and the change in conditions which has for the most part induced the courts to break away from the authority of *Jerome v. Ross,* as that case was commonly construed in its application to cases of trespass involving the cutting or destruction of standing timber.

Many cases sustaining the propriety of injunction to prevent the cutting and destruction of timber are cited in the text-books to which we have referred and in brief of counsel for complainant.

(2) Complainant shows that he is the undisputed owner and in possession of the land. On the averments of the bill he is also the owner of the trees, which are a part of the land, though defendant claims to have the right to cut and carry them away. Defendant had begun to cut the timber when this bill was filed, and had announced its purpose to continue doing so until all of it is taken from the land. The bill for an injunction to prevent this wholesale injury has equity, and this without regard to the solvency or insolvency of the defendant. The financial status of the defendant is not a matter of importance when the nature of the injury threatened is such as to make it irreparable. It is only in cases where the injury may be adequately estimated and compensated in money that it becomes material to inquire whether the trespasser is able to respond to a judgment at law for damages. In this case complainant avers a threatened destruction of all the timber on his land, a permanent injury to the substance of his estate, thus bringing his case within that class in which equity should interfere to prevent an injury deemed irreparable because no judgment at law can restore to him his estate in the character in which he now enjoys it.

Our judgment is that the bill contains equity and that the court erred in dissolving the injunction on the ground that the bill stated no equitable cause of action.

Some other questions are discussed in brief of counsel for complainant, but we doubt that the case is ripe for a decision of

[Lusk, et al. v. Britton.]

them. They can be deferred until the defendant has disclosed the full and true nature of its claim of right to the trees.
Reversed and remanded.

MAYFIELD, SOMERVILLE, GARDNER, and THOMAS, JJ., concur. ANDERSON, C. J., and McCLELLAN, J., dissent.