(86 South. 535)
**O'REAR et al. v. AARON et al.   (6 Div. 930.)**

(Supreme Court of Alabama.   June 17, 1920.
Rehearing Denied Oct. 21, 1920.)

**1. Mortgages ⬡193—One whose right of redemption had expired could not waive forfeiture of timber contract.**

Where ownership of lands was subject to a contractual right to redemption or purchase in favor of another, who sold timber on the lands and declared a forfeiture of timber contract prior to expiration of period of redemption, he could not, subsequent to expiration of such period, reinstate the timber contract or waive the forfeiture without the consent of the owners of the land.

**2. Logs and logging ⬡3(5)—Acceptance of money for timber cut subsequent to forfeiture validated contract only as to timber paid for.**

Where vendor of timber terminated timber contract by effectually declaring a forfeiture, his acceptance of money for timber cut thereafter or for timber that might be cut after such a payment did not reinstate the contract as a whole, but validated only the cutting of the timber paid for.

**3. Logs and logging ⬡3(15)—Temporary injunction issued against cutting of timber pending determination of merits.**

Owners of timber land suing to cancel timber lease and to enjoin cutting of timber, on ground that timber lease had been forfeited, were entitled to a temporary injunction restraining the cutting of timber pending the determination of the merits.

**4. Logs and logging ⬡3(5)—Contract held not to require 60 days' notice of default before forfeiture.**

Timber contract requiring a default for 60-day period before vendor could declare a forfeiture *held* not to require a 60 days' notice of default before declaration of forfeiture.

**5. Logs and logging ⬡3(15)—Injunctive relief against holdover tenant or contractee not dependent on irreparable damage.**

Owner's right to injunctive relief against a holdover tenant or contractee in violation of terms of the contract under which possession and timber rights were held and claimed was not dependent on the theory of irreparable injury to the land, it being sufficient that a possessory contract had been and was being violated to the injury of the owner.

Appeal from Circuit Court, Walker County; J. J. Curtis, Judge.

Bill by J. D. O'Rear and R. A. O'Rear against Monroe Aaron and Henry McNeal to cancel a timber lease and to enjoin the respondents from cutting timber thereon. From a decree declining to grant a temporary injunction, complainants appeal. Reversed and rendered.

The bill shows: That complainants acquired title to certain lands on December 16, 1918, as purchasers from J. H. Bankhead, Jr. That prior thereto and on December 7, 1916, the said lands were owned by said Bankhead subject to a contractual right to redemption or purchase in favor of one Martin O'Rear, to be exercised by him not later than November 27, 1918. That on December 7, 1916, said Martin O'Rear entered into a contract in writing with the respondent Monroe Aaron, the substance of which is as follows: (1) That the vendor will sell, and the purchaser will buy, all the timber and trees exceeding 12 inches in diameter growing on said land; (2) the purchase price, $3.00 per thousand feet to be paid between the 15th and 20th of each month for all timber cut during the previous month; (3)

Four thousand dollars to be paid in cash, but not to be accounted for in settlement until $12,000.00 has been otherwise paid; (4) All of said timber and trees, or so much thereof as purchaser desires to be cut down to be cut down within ten years, except certain specified tracts to be cut within five years. (5) At the end of ten years all timber remaining to revert to the vendor and this lease to be terminated and become null and void; (6) If the purchaser shall fail for sixty days to pay in full any and all amounts due under this contract or if he shall fail to carry out and observe any of the obligations and provisions of said contract the vendor may at his option declare said contract forfeited. in which event the title to all the timber shall at once revert to the vendor and he shall have the immediate right to possession of the same.

Paragraph 6 of the bill is as follows:

(6) Complainants aver that they are informed that defendants claim the right to continue cutting the timber on the above-described lands under the terms of a contract heretofore referred to as "Exhibit C," but these complainants allege that defendants have no such right, and that, if they have at any time had the right to cut timber from said lands, they forfeited the same because of the violation by them of practically all of the terms and agreements therein agreed to be performed by them, and that notice of the forfeiture of the said contract and of the right of the defendants and each of them to further cut the timber off said lands has been given to each of the defendants previous to the filing hereof by the said Martin O'Rear and each of these complainants.

It is also charged that respondents in particular violated the lease contract in failing for 60 days to pay in full the amounts due under the terms under the contract.

Paragraph 10 of the bill is as follows:

(10) The complainants further allege that the time in which the said Martin O'Rear had the right to redeem the above-described lands has long since expired, and that he has no interest in said lands whatever; that complainants are the sole owners of said timber and timber interests on the lands described in the second paragraph hereof; that defendants are fast cutting and destroying the timber and lumber on said lands and are not making any payments to complainants therefor, are not making any reports to complainants of the amount of timber or lumber that is being cut or removed from said lands, and are so conducting their lumber and sawmill business on said property as that it will be impossible for complainants to ascertain with reasonable accuracy the amount of timber that is being cut by defendants from said lands so that compensation for the trespasses committed by them cannot be ascertained; that defendants are cutting down the trees on said lands leaving a great many of the trees lying on the ground without converting the same into timber, and are only using a part of the trees so cut down for the purpose of converting the same into lumber; that defendants are not keeping any correct record of the amount of lumber or timber that they are cutting or selling from off said lands, with the consequent result that the rights, interest, and property of complainants are being disregarded, and irreparable loss and injury to complainants and to the property owned by them are being committed; and that, unless by order of your honor's court the defendants are enjoined and restrained from committing further trespasses on said property and from cutting and removing the timber therefrom, the rights and property of complainants in said timber will be entirely loss to complainants.

The prayer is for a temporary injunction restraining respondents or their agents from cutting the timber or removing it or selling the same, and for a decree annulling the respondents' said contract and all rights thereunder and for a permanent injunction.

The respondents deny on information and belief that complainants are the real owners of the lands and charge that they redeemed the land for the benefit of their brother Martin O'Rear. They admit that title was in Bankhead in December, 1916, but exhibit the following writing indorsed on their copy of the said lease contract:

"As the present owner of the lands described in contract between Martin O'Rear and Monroe Aaron, subject to Martin O'Rear right of redemption, I hereby agree to the execution of said contract, provided that the purchase money on the timber shall be paid to me after O'Rear's right of redemption expires. If said O'Rear shall fail to redeem, I agree that Aaron may have credit for the four thousand dollars paid O'Rear on the timber cut by him after he has paid $12,000.00 for the timber cut from off said land."

"[Signed]   J. H. Bankhead, Jr."

They deny also that they have violated the terms of the contract with Martin O'Rear or that the contract was properly forfeited. They assert also that, even if there was a forfeiture, such forfeiture was waived and the contract reinstated by O'Rear's acceptance in January, 1919, of $1,000 as payment for all amounts due down to that date.

W. F. Finch, L. B. Gray, and Lacy, Lacy & Shepherd, all of Jasper, and J. J. Mayfield, of Montgomery, for appellants.

Where the title of complainant is shown to be clear, equity will enjoin continuing trespasses, such as are shown in this case. 96 Ala. 227, 10 South. 848; 144 Ala. 444, 39 South. 519; 147 Ala. 546, 41 South. 145. The remedy at law in such cases is inadequate, and an injunction should be granted, although the respondent is solvent and the title doubtful. 113 U. S. 527, 5 Sup. Ct. 560, 28 L. Ed. 1113; 14 R. C. L. 451; 95 Ala. 235, 10 South. 652; 121 Ala. 567, 25 South. 754; 181 Ala. 276, 61 South. 897; 147 Ala. 280, 41 South. 831. The right of redemption is not an interest in land, but a mere personal privilege. 176 Ala. 134, 57 South. 705.

A. F. Fite and Leith & Powell, all of Jasper, for appellees.

Appellants could not have been purchasers of the land without notice of the rights of Aaron, in the face of the evidence in this case. 162 Ala. 158, 50 South. 313. Moreover, they required nothing from Bankhead but a quitclaim deed, and could not be protected against Aaron's rights. 100 Ala. 326, 13 South. 948, 46 Am. St. Rep. 56; 176 Ala. 456, 58 South. 465; 200 Ala. 630, 77 South. 4. So far as Aaron is concerned, the appellants in this case never required any title to the merchantable timber on the land, 184 Ala. 137, 63 South. 651; 127 Ala. 279, 28 South. 476. Aaron had such an equitable title as to have the legal title transferred to him. 200 Ala. 627, 77 South. 1. Forfeitures are not favored in equity. 99 Ala. 90, 10 South. 293; 102 Ala. 184, 14 South. 565; 68 South. 149.

SOMERVILLE, J. We have given studious consideration to the merits of the controversy here presented, as shown by the sworn bill and answer, the exhibits, and the numerous affidavits offered for and against.

[1, 2] The bulk of the record forbids a discursive review of its details, and we shall merely state our conclusions of fact and of law: (1) Complainants, as quitclaimees of J. H. Bankhead, Jr., became the owners of the land in question on December 16, 1918, and, as his privies in estate, succeeded to all of his rights in the lands, in the timber, and in the timber contract between Martin O'Rear and Monroe Aaron; (2) Monroe Aaron violated that provision of his contract which required him to pay amounts due thereunder within 60 days after they became due; (3) Martin O'Rear was thereby armed with the power to declare the entire contract forfeited; (4) he seasonably declared such a forfeiture, and the forfeiture became effective at least as early as November 20, 1918; (5) while the forfeiture was effective, on or about November 27, 1918, Martin O'Rear's right of redemption expired, and his interest in the land, and his rights under the contract, were terminated; (6) thereafter, down to December 16, 1918, said O'Rear was without authority to reinstate the contract or to waive the forfeiture already effected without the consent of Bankhead, nor could he do so after December 16, 1918, without the consent of complainants, who thereafter stood in Bankhead's shoes; (7) neither Bankhead nor complainants consented to such a reinstatement or waiver; (8) the transaction of January 16, 1919, between Martin O'Rear and Monroe Aaron, including Aaron's payment to O'Rear of $1,000 in adjustment of amounts due, or past due, at that time, under the contract, was not a waiver of the forfeiture already declared, in view of the new arrangement which they then agreed upon looking to the purchase of the lands from complainants, and their joint prosecution of the timber business thereon; (9) as a matter of law, when this contract had been effectually forfeited by the seasonable action of O'Rear so that it was completely at an end, the mere acceptance of money by O'Rear for timber cut thereafter, or even for timber that might be cut after such payment, did not reinstate the contract as a whole, but validated only the cutting of the timber paid for; (10) in any case, under the express terms of the contract with Bankhead, which are effective in favor of his grantees, these complainants, Aaron had no right to pay any money for timber cut after November 27, 1918, to Martin O'Rear, and O'Rear had no right to receive it, and hence its payment and reception could not, for that reason, have any legal effect upon the previously forfeited contract.

[3] It results from the several conclusions stated that complainants were entitled, upon the showings made, to a temporary writ of injunction, as prayed, to preserve the subject-matter of the litigation from loss or destruction pending a determination of the merits of the respective claims.

Our conclusions of fact herein are, of course, but provisional, and effective only for the purposes of this appeal.

[4] We may observe here that the trial court fell into the error of holding that, under the terms of the contract, its forfeiture could not be declared except after 60 days' notice to the offending party. That error is due to a misconstruction of section 12 of the contract, which merely required a default of 60 days in payments by Aaron, before O'Rear could declare a forfeiture—and entirely different proposition. No doubt that erroneous conception of the contract decisively influenced the court in the conclusion reached.

[5] So far as the right to injunctive relief in this case is concerned, its invocation against a holdover tenant or contractee, in violation of the terms of the contract under which possession and timber rights were held and claimed, is not dependent upon the theory of irreparable injury to the land. It is enough that a possessory contract has been and is being violated, to the injury of the owner. F. W. Woolworth Co. v. Frank Nelson, Jr. (Nov., 1919) ante, p. 172, 85 South. 449.

The decretal order denying the temporary writ will be reversed, and it is ordered and decreed that the temporary writ be issued, as prayed, upon the execution of a sufficient bond, approved as the law requires.

Reversed and rendered.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.