192 So. 278

**WILLIAMS v. JOHNS–CARROLL LUMBER CO.**

**4 Div. 114.**

Supreme Court of Alabama.

Nov. 23, 1939.

---

[1] Ante, p. 495.

J. B. Hicks, of Phenix City, and Chauncey Sparks, of Eufaula, for appellant.

538

H. A. Ferrell, of Seale, Roy L. Smith, of Phenix City, and McDowell & McDowell, of Eufaula, for appellee.

GARDNER, Justice.

The appeal is from a decree sustaining demurrer to complainant's bill, rested, as we interpret brief of counsel, upon the theory the bill is without equity. And this theory, in turn, is rested upon the conclu-

sion that the defendant lumber company was in the exercise of its legal rights under its timber sale contract.

Omitting details, the salient facts may be summarized as follows: Complainant, first a tenant of R. H. Powell, and others whom he represented, on a tract of land known as the "Duck Williams place" containing approximately 1,682 acres, became a purchaser of the property under deed of November 9, 1937, which conveyed to him the fee simple title, but contained the following recital:

"This conveyance is also made subject to a timber sales contract made by the grantors herein on September 17, 1936, to the Johns-Carroll Lumber Company; said timber sale vesting in said lumber company the right to cut and remove pine timber from said property during a period of four years, which will expire September 17, 1940."

Since the execution of this deed complainant has remained in possession as an undisputed owner of the property.

This timber sales contract of September 17, 1936, referred to above, conveyed to defendant, Johns-Carroll Lumber Company, "all of the pine timber and trees of every kind and description, both standing and fallen, situated, and being upon the following described lands in Russell County, Alabama, to-wit", describing the above noted acreage. The time limit for removal of the timber was fixed as four years from its date.

In the deed also were certain rights and immunities granted, such as entry upon the land to remove "the said timber," and of ingress and egress "in, over, upon and across said lands necessary and ordinarily appurtenant to the convenient cutting, hauling, manufacturing, shipping and handling of such timber and the products thereof," the right to build roads, railroads, houses, erect sawmills, lumber yards, planing mills, machinery, and to use the same in manufacturing "said trees and logs cut from said lands into lumber and products of any and all kinds," and there are elaborate provisions made for the use of the land in any manner that "may be found necessary or convenient in the business of the grantee."

Complainant, in privity in estate with his grantors, Powell and others, insists that defendant is exceeding its rights under the timber sales contract, and denuding the land of timber not sold under a proper interpretation of said contract.

He can, of course, assert no right beyond that which his grantors could assert. But it does not appear to be seriously questioned that by virtue of his ownership of the property under the deed of November 9, 1937, he is entitled to assert such rights as his grantors' originally possessed. 50 Corpus Juris 403 et seq.; O'Rear v. Aaron, 204 Ala. 550, 86 So. 535.

In Nettles v. Lichtman, 228 Ala. 52, 152 So. 450, 91 A.L.R. 1455, it was held that descriptive language of similar import to that in the timber sales contract here involved was ambiguous, considering the words used, their relation to each other, in connection with the other parts of the contract touching its subject matter.

Here, as there, the word "tree," standing alone would embrace "a woody plant whose branches spring from and are supported upon a trunk or body," and "the tree may be young or old, small or great." But here, as there, the word does not stand alone, but is associated with the word "timber," defined in one of our cases as "such stuff as is suitable for building and allied purposes." But the word is recognized also as having an enlarged or restricted sense, according to the connection in which it is employed. Illustrative cases are commented·upon in the Nettles case, supra, and others cited in the note to 91 A. L.R. supra.

We consider the question needs no further elaboration in view of the closely analogous Nettles case, supra, containing full discussion. Under that authority, therefore, we think it clear enough, the whole language of the timber sale contract considered, an ambiguity is made to appear and the contract open for proper interpretation by the courts in the light of all surrounding facts and circumstances.

Of course, as contended by counsel for defendant, when the language is plain and unambiguous there is no room for interpretation, as it is not the province of the courts to make contracts for the parties. An extreme illustration of this principle is the case of Oates v. Lee, 222 Ala. 506, 133 So. 44, to which counsel direct attention, as well also Wilkes v. Teague, 224 Ala. 283, 140 So. 347; Alexander v. Bond Bros., 232 Ala. 533, 168 So. 561; Wright v. Bentley Lumber Co., 186 Ala. 616, 65 So. 353; Jasper Land Co. v.

Manchester Sawmills, 209 Ala. 446, 96 So. 417, each of which have been carefully read and considered.

■ It is a familiar rule also that all prior negotiations and conversations (W. T. Rawleigh Co. v. Cone, 232 Ala. 127, 167 So. 274; Jones v. Tennessee Land Co., 234 Ala. 25, 173 So. 233) are merged into the written contract, and that when the deed discloses that the object in the recitals of the deed was to make the matter recited a "fixed fact," it will be so considered. Youngerman-Reynolds Hardwood Co. v. Hicks, 236 Ala. 138, 181 So. 111.

■ But these principles in no wise conflict with the rule that "where the language of a deed is ambiguous, the intention of the parties may be ascertained by a consideration of the surrounding circumstances existing at the time of its execution, and for this purpose the court will place itself as nearly as possible in the position of the parties when the instrument was executed. * * * To ascertain the intent in respect to the property conveyed, reference may be had to the state of facts as they existed when the instrument was made, and to which the parties may be presumed to have had reference." Nettles case, supra [228 Ala. 52, 152 So. 452, 91 A.L.R. 1455]. See, also, McGhee v. Alexander, 104 Ala. 116, 16 So. 148.

■ We have shown that the timber contract is ambiguous, and such being the case the above rule of interpretation becomes applicable. And upon the matter of proper construction in such cases, contemporaneous writings may be considered. "The intention of the parties controls, and is to be gathered from the writings to which their stipulations and agreements may be referred." Kelly v. Life Ins. Clearing Co., 113 Ala. 453, 21 So. 361, 364. See, also, Weeden v. Asbury, 223 Ala. 687, 138 So. 267; White v. Breen, 106 Ala. 159, 19 So. 59, 32 L.R.A. 127; Jenkins v. Harrison, 66 Ala. 345. And these writings include antecedent correspondence between the parties touching the subject matter of the contract. 12 Amer.Jur. pp. 737, 738; 13 Corpus Juris 530.

Of course, the paramount consideration for the court is the ascertainment of the intent of the parties to the contract. In view of all the surrounding facts and circumstances considered in the Nettles case, supra, the deed there involved was construed not to include timber suitable only

for pulpwood. Perhaps in view of the establishment of paper mills in the South, and the broad demand for such small timber at this time, a different construction might follow as to the timber contract in the instant case.

But the bill shows other considerations, which we think must lead to a different result,—these considerations having reference to the prior negotiations of the parties relative to the purchase of the timber. The contract was the result of these negotiations, all of which appear to have been carried on by correspondence between the defendant and Powell who acted for all the sellers. The written negotiations were begun by a letter from defendant by A. B. Carroll directed to Powell of date September 5, 1936. An offer of a lump sum of $900 was made for the pine timber on the land,—the statement being that an estimate had been made, and there were "approximately 400,000' merchantable pine timber, i. e., that will square 6" from the ground, this is as small as we saw." On September 7th, following Powell replied: "I note your statement that there is approximately 400,000 feet of merchantable pine timber that will square 6" and measuring from nine to ten inches in diameter, 12" from the ground. You offer for this, or for such timber as will meet the above dimensions, $900.00 with a four year timber lease for removing the timber from the land." Powell then insists upon a more liberal estimate as to quantity and a more liberal price, and offers to take $1,500. The two concluding letters are as follows:

"September 8, 1936.
"Powell and Powell
"Tuskegee, Alabama.
"Gentlemen:
"We have your favor of the 7th with reference to the timber on the Williams place north of Hatchechubbee, in our letter to you under date of September 5th we told you that our man cruised approximately 400,000 of merchantable pine timber on this place that will square 6", measuring 9 to 10" in diameter, 12" from the ground, and a price of $900.00 for the 400,000 will figure $2.25 per M.

"The situation is this, the larger part of the pine timber on this place that is large enough to saw is timber that was left a few years ago when Mr. Smith cut over these lands due to being in an inconvenient place to log, we are sure at least half of the timber was left due to the location, and

due to this fact the timber really is not worth the top price. We are paying from $2.50 to $3.00 for well located and good average timber to know that there is a difference in stumpage.

"We could not raise our estimate of more than 400,000' as we have been sincere in reporting this amount found on the place, but we are going to offer you 25¢ per M. more and offer $1,000.00 for this timber with a four year release for removing same, and if this price is satisfactory to you and Mrs. Johnson advise us, furnishing land numbers, and we will prepare timber contract.

"Awaiting your further advice, we are,

"Yours very truly, ·

"The Johns-Carrol Lumber Co.,

"A. B. Carrol."

"September 10, 1936.

"The Johns-Carrol Lumber Co.,

"Hurtsboro, Alabama.

"Gentlemen:

"Replying to your letter of the 8th, I advise that I have decided to accept your proposition of $1,000 net for timber on the J. W. Williams place.

"I enclose a copy of the assessment which gives the description of the property. You can prepare your timber grant and mail to me, and I will then forward the same to Mrs. Johnston, who owns a one-half interest and who is now in Houston, Texas.

"We will sign and get it back to you promptly, and deliver upon payment of the amount agreed upon.

"Yours very truly,

"R. H. Powell".

■ The bill shows that the defendant, the grantee in the timber sale contract, prepared the deed and forwarded to Powell for execution, and under such circumstances the rule of construction obtains that the instrument is to be taken most strongly against the party preparing the deed. Youngerman-Reynolds Hardwood Co. v. Hicks, 236 Ala. 138, 181 So. 111.

■ When we take into consideration these contemporaneous writings and consider them in the light of the surrounding facts and circumstances, as disclosed thereby, and by the ambiguous language of the timber sale contract, all to be considered as a whole, we think it reasonably appears that it was the intent of the parties the limitation as to the size and character of the pine timber to be cut and removed was as stated in these prior negotiations.

■ The bill shows a disregard by defendant as to this limitation of size of the timber as well as its character, as it appears defendant is not only cutting and claiming a right to continue to cut pine timber of smaller size, but also timber other than pine upon the land, and timber in fact which is on adjoining land belonging to complainant, and in no manner embraced in the timber sales contract. Complainant has a right, therefore, to injunctive relief for the prevention of irreparable injury to his estate, and this without regard to the solvency or insolvency of defendant. Tidwell v. H. H. Hitt Lumber Co., 198 Ala. 236, 73 So. 486, L.R.A.1917C, 232. "The owner of timbered lands is entitled to enjoy them in the state in which they are held and to have the benefit of the increment thereon. In this era of growing scarcity of standing timber, a tendency is toward protection of the owner by injunctive process, rather than leaving him to an action at law for money compensation." Acker v. Green, 216 Ala. 445, 113 So. 411, 413.

And in the Tidwell case, supra [198 Ala. 236, 73 So. 489, L.R.A.1917C, 232], the following expression referring to injunctive relief is approvingly quoted: "In short, it is now granted in all cases of timber, coals, ores, and quarries, where the party is a mere trespasser, or where he exceeds the limited rights with which he is clothed, upon the ground that the acts are, or may be, an irreparable damage to the particular species of property."

Under this view of the case, therefore, the bill makes out a case for injunctive relief and has equity. The decree to the contrary must therefore be held erroneous.

But we find ourselves not in accord with the further insistence of complainant that defendant by his contract was confined to 400,000 feet of timber. His contention is that the timber sale was by the unit system, that is, so much per thousand feet, and we are cited to Weeden v. Asbury, 223 Ala. 687, 138 So. 267; Winston v. Browning, 61 Ala. 80; Terry v. Rich, 197 Ala. 486, 73 So. 76; Hodges v. Denny, 86 Ala. 226, 5 So. 492.

■ However, as we construe the language of the letters forming the basis of the contract, the sale was in gross. True, the timber had been estimated as to quantity, but we think all parties understood it

was an estimate only, and for the purpose of arriving at a proper price for a sale in gross. Powell's letter suggesting either a raise in the estimate or in the price indicates a mere effort to make a more advantageous lump sum sale and nothing more. Such being our construction of these negotiations, complainant is not entitled to have a limitation of quantity to 400,000 feet of merchantable timber.

But the demurrer to the bill as a whole for want of equity was sustained, and must accordingly be here reversed. Jasper Land Co. v. Manchester Sawmills, 209 Ala. 446, 96 So. 417.

It results therefore that the decree sustaining the demurrer to the bill will be reversed and the cause remanded for further proceedings in harmony with the views herein expressed.

Reversed and remanded.

ANDERSON, C. J., and BOULDIN and FOSTER, JJ., concur.