MURDOCK, Justice.
 

 The Water Works and Sewer Board of the City of Birmingham (“the Board”) appeals from the denial of its motion seeking a preliminary injunction against Inland Lake Investments, LLC (“ILI”), concerning ILI’s development of property near Inland Lake. We reverse and remand.
 

 I. Facts and Procedural History
 

 The Board provides drinking water to residents of Jefferson, Shelby, Walker, Blount, and St. Clair Counties. It owns property adjacent to Inland Lake in Blount County as well as the lake itself. The Board uses Inland Lake as one of its four major sources of water for its commercial and residential customers. The Board treats 12 to 15 million gallons of water per day from Inland Lake at its Carson filter plant.
 

 ILI also owns property adjacent to Inland Lake. In early 2006, ILI wrote the Board requesting access to Inland Lake for purposes of a 3,500-acre residential and commercial development ILI proposed to build on the property. The Board responded that in order to permit such access, it would need to review and approve ILI’s development plans, including its plans for sediment and erosion control. ILI declined to turn over its plans and instead started the development process. This process included clearing and grading activities to insert a roadway on ILI’s property adjacent to the Board’s property.
 

 The Alabama Department of Environmental Management (“ADEM”) requires developers of commercial or residential property to obtain a National Pollutant Discharge Elimination System (“NPDES”) permit before starting a project. Before ADEM approves such a permit, the developer must submit a sediment and erosion control plan that details the best management practices (“BMPs”) the developer will use to minimize soil runoff and ero
 
 *688
 
 sion. BMPs are structural and nonstructural controls implemented to prevent erosion and to control sediment runoff. They include, among other measures, mulch, grass, hay bales, trees, and fences. ILI began its construction without applying for or receiving an NPDES permit. ADEM issued a warning letter to ILI on November 17, 2006, ordering it to cease construction until it obtained an NPDES permit. On December 13, 2006, ADEM issued an NPDES permit to ILI for its Inland Lake development project.
 

 The Board alleges that as the development progressed, it began to notice that large amounts of sediment were flowing from ILI’s property into a tributary of Inland Lake on the Board’s property, known as Sawmill Slough. In order to protect its water source, the Board sued ILI in the Blount Circuit Court, alleging continuing trespass, public and private nuisance, and negligence and wantonness, and seeking damages for the sediment deposited in Inland Lake as a result of ILI’s development project. The Board accompanied its complaint with a motion for a preliminary injunction against ILI, asking the trial court to enter an order prohibiting ILI from “continuing with construction of [its] development at Inland Lake in such a manner as will result in further discharge of sediment and other fill material or pollutants onto [the Board’s] land or into Inland Lake” and requiring ILI “to implement all possible measures to prevent the failure of sediment and erosion control measures on [ILI’s] construction site, to immediately repair any future failure, and to report any failure to [ADEM] and [the Board] within 24 hours.”
 

 During a hearing on the Board’s motion for a preliminary injunction, the Board’s expert, DeWayne Smith, a professional engineer and a certified professional in erosion and sediment control, testified, based on a “flyover” of ILI’s property he had recently performed, that ILI had not implemented almost any BMPs on its construction site. Smith also testified that drainage from ILI’s construction site flowed downward onto the Board’s property. Jimmy Jackson, the Board’s supervisor of Inland Dam,
 
 [1]
 
 testified that his inspection of Sawmill Slough and Inland Lake revealed a marked increase in sediment that appeared to be coming from ILI’s construction site.
 

 Gail Holcomb, an environmental scientist with ADEM, testified that she inspected ILI’s construction site on April 25, 2007, and had found the BMPs to be inadequate and not maintained. Holcomb had issued a warning letter on behalf of ADEM to ILI on May 7, 2007, ordering that the deficiencies she noticed on her April 25, 2007, inspection be corrected. Holcomb again inspected ILI’s construction site on July 25, 2007. She found the situation concerning the implemented BMPs to be much improved, but the BMPs were still inadequate. Holcomb also testified that on August 3, 2007, she inspected a tributary leading into Sawmill Slough and observed sediment “all the way from the lake all the way up to an outlet of the construction site.” On August 7, 2007, ADEM issued a notice of violation to ILI, informing ILI that it was in violation of its NPDES permit.
 

 ILI subsequently entered into a consent decree with ADEM concerning its violations of the NPDES permit. In the consent decree, ILI denied the factual allegation that it had violated the permit, but it agreed to implement all BMPs requested by ADEM. The consent decree provided for the imposition of daily fines and penalties if ILI did not meet the requirements
 
 *689
 
 of the consent decree. In the hearing before the trial court, ILI made an oral motion to dismiss the Board’s complaint based on the consent decree, arguing that the consent decree provided all the relief the Board had requested in its complaint and its motion for a preliminary injunction. The trial court denied ILI’s motion to dismiss.
 

 In September 2007, a heavy rain event occurred in the Inland Lake area. Jimmy Jackson testified at the hearing that he inspected Sawmill Slough during the rain event and observed a heavy flow of muddy water coming downstream into Inland Lake. Jackson stated that he had never seen as much sediment in Sawmill Slough as was present during the rain event. The Board’s expert, DeWayne Smith, testified that, in the month before the hearing, he had completed two ground inspections of ILI’s construction site, he had done a second flyover of the construction site, and he had walked up Sawmill Slough. Smith testified that although some BMPs had been implemented by ILI, they were not adequate, and sediment continued to flow off the construction site and into Sawmill Slough. Smith stated that the additional BMPs ILI had implemented would not be sufficient to prevent sediment from continuing to flow from the construction site onto the Board’s property during rain events.
 

 Joel Rhaly, the Board’s manager of water and wastewater treatment, testified that the water from Inland Lake was historically “pristine” and the cleanest water from any of the Board’s water sources. Rhaly stated that he had inspected Sawmill Slough and observed increased sediment in the water. He also stated that increased turbidity
 
 [2]
 
 in water requires an increase in the amount of chemicals used to treat the water, which can cause the water to have an undesirable odor or taste. Rhaly testified that filtering out the turbidity in the water results in sludge that must be put into a form that ADEM will accept so that it can be placed in a landfill, which adds to the Board’s water-treatment expenses. He also stated that increased turbidity in the water could affect the kind of expansion the Board planned for the Carson filter plant in the next two years.
 

 Under questioning from the trial court, Rhaly admitted that from the time ILI began its construction in November 2006, there had not been an increase in the turbidity of the water tested at the Carson filter plant. He stated that there had not been a problem with water quality at the Carson filter plant since ILI started its development project. He stated that he could not associate any problems with the water from Inland Lake with ILI’s construction activity. All the Board’s witnesses — Jackson, Smith, Holcomb, and Rhaly — admitted that with extra effort and expense any extra sediment in the water could be removed.
 

 At the conclusion of the hearing, the trial court stated that “[biased on the evidence and the caselaw,” it did not “believe [the Board had] met the burden” for the issuance of a preliminary injunction. Accordingly, the trial court made an entry in the case-action-summary sheet denying the Board’s motion for a preliminary injunction. The Board appeals.
 

 II. Standard of Review
 

 The requirements for a preliminary injunction are well known and have been often stated by this Court:
 

 
 *690
 
 “ ‘Before entering a preliminary injunction, the trial court must be satisfied: (1) that without the injunction the plaintiff will suffer immediate and irreparable injury; (2) that the plaintiff has no adequate remedy at law; (3) that the plaintiff is likely to succeed on the merits of the case; and (4) that the hardship imposed upon the defendant by the injunction would not unreasonably outweigh the benefit to the plaintiff.’ ”
 

 Blount Recycling, LLC v. City of Cullman,
 
 884 So.2d 850, 853 (Ala.2003) (quoting
 
 Blaylock v. Cary,
 
 709 So.2d 1128, 1130 (Ala.1997)). Because, as discussed below, our review of the trial court’s order in this particular case “is grounded only in questions of law based on undisputed facts,” our review is de novo.
 
 See Holiday Isle, LLC v. Adkins,
 
 12 So.3d 1173, 1176 (Ala.2008).
 

 III. Analysis
 

 In the present action, the record clearly reflects that the trial court denied the Board’s motion for a preliminary injunction because the trial court concluded that the Board had not shown an “irreparable injury” (element number 1) and therefore had not shown that it did not have an “adequate remedy at law” for its injury (element number 2). At the end of the hearing on the Board’s motion for a preliminary injunction, counsel for the Board and the trial court engaged in the following colloquy, which succinctly explains both the position of the Board and the basis upon which the trial court made its ruling:
 

 “[COUNSEL FOR THE BOARD]: Judge, we have other cases here on point on the continued nature of the trespass which [state that] injunction is the proper remedy for the continuing . nature [of the trespass].
 

 “THE COURT: That is all well and good, but what about the aspect of what is required for a preliminary injunction? The caselaw that I have cited from your motion that you filed, I think the law is pretty clear that certain requirements be met. One is that the plaintiff suffered immediate and irreparable injury, likelihood of success [on] the merits, [and the] hardship imposed on the defendant by the injunction would not reasonably outweigh the claim of the plaintiff. It seems to me you have an adequate remedy at law. I don’t have any testimony that satisfies me that there is an irreparable injury.
 

 “[COUNSEL FOR THE BOARD]: The continued nature of this trespass is irreparable injury. The adequate remedy that we have is after we have more damage. The injunction comes in to keep us from being damaged over and over again. That is what the caselaw holds. That is the irreparable part. Unless you enjoin [ILI] and it rains again, [the Board] is going to be harmed. That is the irreparable harm....
 

 “THE COURT: No, you are harmed again. That doesn’t mean it is irreparable. It could rain or not and there would be more sedimentation com[ing] in. But based on the testimony, it can be removed. Based on the testimony of Mr. Rhaly that since the construction started ... in November, there has been no degradation of the water quality from the lake.... I don’t doubt and disagree to the testimony that there is a trespass of maybe a continuing nature. I’m looking to get over these hurdles that there is no adequate remedy [at] law and [the injury] is immediate and irreparable. Your own people testified that [the sediment] could be removed. There is no degradation of water quality. Nothing has been changed at the [Carson] filter
 
 *691
 
 plant. The law says you have to meet each one of the prerequisites.... ”
 

 The trial court elaborated on its conclusion with the following statements:
 

 “THE COURT: ... I don’t believe [the Board has] met the burden to grant a preliminary injunction. However, I certainly would admonish [ILI], given [the ADEM] consent decree that [ILI] has entered into, that there ought to be negotiations with [the Board] such that would negate the necessity of going forward on the whole complaint.
 

 [[Image here]]
 

 “THE COURT: I don’t know what [ILI’s] evidence would be, but I do think it is fairly clear that there is a trespass of even a continuing nature on [the Board’s] property. I haven’t read this whole Consent Order, but as I said, [ILI] should negotiate and enter into something in a fairly quick manner with [the Board] such that [the Board] or this Court [has] rights to enforce the same things or secure [the- Board’s] further rights requiring basically the same thing as ADEM is requiring.”
 

 From these and other comments by the trial court in the hearing on the Board’s motion for a preliminary injunction, it seems clear that the trial court believed that the Board had established that ILI was committing a continuing trespass during the construction of its Inland Lake development project by allowing sediment from its construction site to migrate into the Sawmill Slough and subsequently into Inland Lake. It is also apparent, however, that the trial court concluded that the injury sustained by the Board was not “irreparable” because its witnesses had testified that the sediment could be removed from the water. The trial court therefore reasoned that the Board had an adequate remedy at law because its injury consisted of the added expense involved in treating the water it extracted from Inland Lake that contained more sediment.
 

 The Board contends on appeal — as it did before the trial court — that its injury is irreparable because it is continuing in nature.
 
 [3]
 
 The evidence the Board presented indicated — and the trial court agreed— that every time it rains, sediment from ILI’s construction site pours into Sawmill Slough and Inland Lake.
 
 [4]
 
 The Board adds that monetary damages are not an adequate remedy for an injury of this nature because, it says, only an injunction can prevent recurring damage to its property.
 

 The remedy of an injunction is available for trespasses of this nature.
 
 See, e.g.,
 
 
 *692
 

 Poffenbarger v. Merit Energy Co.,
 
 972 So.2d 792, 802 n. 11 (Ala.2007) (noting that “[i]n an appropriate case, the equitable remedy of an injunction can be an appropriate form of relief by which a thing or a substance tortiously placed on another’s land can be removed or by which an injury to property otherwise is corrected and the property restored to its pre-trespass condition”);
 
 Borland v. Sanders Lead Co.,
 
 369 So.2d 523, 530 (Ala.1979) (explaining the difference between a nuisance and an “actionable trespass” for an “indirect invasion” of property in which “some substance has entered upon the land itself’).
 

 This Court has observed that “[ijrreparable injury’ is an injury that is not redressable in a court of law through an award of money damages.”
 
 Perley v. Tapscan, Inc.,
 
 646 So.2d 585, 587 (Ala.1994).
 
 [5]
 
 The Court has likewise stated that “[a] plaintiff that can recover damages has an adequate remedy at law and is not entitled to an injunction.”
 
 SouthTrust Bank of Alabama, N.A. v. Webb-Stiles Co.,
 
 931 So.2d 706, 709 (Ala.2005). Thus, “a conclusion that the injury is irreparable necessarily shows that there is no adequate remedy at law.”
 
 Fleet Wholesale Supply Co. v. Remington Arms Co.,
 
 846 F.2d 1095, 1098 (7th Cir.1988).
 

 The trial court concluded that because the invasive sediment could be removed from the water at Inland Lake through various treatment techniques, the Board had not suffered an irreparable injury. In other words, because, in the trial court’s view, the Board could be compensated for the increase in the cost of water treatment created by ILI’s trespass, the Board was not entitled to injunctive relief. We disagree.
 

 “To say that the injury is irreparable means that the methods of repair (remedies at law) are inadequate.”
 
 Fleet Wholesale Supply,
 
 846 F.2d at 1098. In
 
 Cobia v. Ellis,
 
 149 Ala. 108, 42 So. 751 (1906), the plaintiff sought an injunction after the defendant had increased the height of a dam he had erected across the Chattooga River, resulting, at high tide, in an overflow of water onto the plaintiffs land. This Court stated:
 

 “To protect a landowner against constant or frequently recurring injuries from the wrongful diversion of water, equity has jurisdiction concurrent with courts of law, and
 
 will enjoin the 'wrongdoer without regard to his ability to respond in damages, since a single action at laio will not furnish an adequate remedy, and a 'multiplicity of suits can be avoided by proceedings in chan
 
 cery....
 

 [[Image here]]
 

 “The injury complained of in the bill is constantly recurring at each high tide of the river; a single action of law would not, therefore, furnish an adequate remedy, and the right to preventive relief in a court of equity, upon such facts, is clear.”
 

 Cobia,
 
 149 Ala. at 111, 42 So. at 752 (emphasis added).
 

 Like the water that would flood the plaintiffs land in
 
 Cobia
 
 at each high tide, the body of water from which the Board extracts water is inundated with new sediment from ILI’s construction site each time it rams because of ILI’s failure to take steps to curtail the effects of runoff and erosion from its property. To receive compensation for the injury done to its
 
 *693
 
 property, the Board would have file a new action after every substantial rainfall. That is an ineffective and inefficient means of adequately compensating the Board for the injury.
 
 See Cardinal Health Staffing Network, Inc. v. Bowen,
 
 106 S.W.3d 230, 235 (Tex.Ct.App.2003) (explaining that “[a]n adequate remedy at law is one that is as complete, practical, and efficient to the prompt administration of justice as is equitable relief’).
 

 This Court has stated repeatedly that it is
 

 “committed to the equitable right of injunction by the owner of land in possession when the trespass is of a continuous or repeated nature, so that actions at law would be inadequate.
 
 Birmingham Trust & Savings Co. v. Mason,
 
 222 Ala. 38, 130 So. 559 [ (1930) ], and cases cited;
 
 Tidwell v. H.H. Hitt Lumber Co.,
 
 198 Ala. 236, 73 So. 486 [ (1916) ];
 
 Green v. Mutual Steel Co., Inc.,
 
 268 Ala. 648, 108 So.2d 837 [ (1959) ]. There being no question of disputed title, or at least that equitable relief is not barred on that ground, injunction is the proper remedy to restrain trespasses where the remedy at law is inadequate because of the nature of the injury or because of the necessity of multiplicity of actions to obtain redress.
 
 Lewis v. Hicks,
 
 264 Ala. 440, 87 So.2d 867 [ (1956) ].”
 

 Underwood, v. West Point Mfg. Co.,
 
 270 Ala. 114, 118, 116 So.2d 575, 577 (1959);
 
 see, e.g., Brackin v. Porter,
 
 270 Ala. 629, 631, 120 So.2d 693, 695 (1960) (same).
 
 See also Green v. Mutual Steel Co.,
 
 268 Ala. 648, 651, 108 So.2d 837, 839 (1959) (stating that a “remedy at law is inadequate” where there is “an injury occasioned by repeated trespasses which would require a multiplicity of actions at law in order for complainant to secure complete pecuniary compensation”).
 

 In short, having concluded that ILI was committing a continuing trespass upon the Board’s property, one that recurred every time the Inland Lake area sustained a substantial rain event, the trial court erred in ruling that the injury suffered by the Board was not irreparable solely because the additional sediment could be removed in the water-treatment process. Redress through money damages for such a trespass is not adequate because of the continuing nature of the trespass and the multiplicity of actions that would be required to compensate the Board for the ongoing injury. The trial court’s order therefore is due to be reversed.
 

 A reading of the record at trial indicates that the trial court believed that the Board was likely to succeed on the merits of its action (the third element required for a preliminary injunction,
 
 see Blount Recycling, supra).
 
 Whether the Board’s motion for preliminary injunction was due to be or could be denied on the ground that the Board failed to prove “that the hardship imposed upon [ILI] by the injunction would not unreasonably outweigh the benefit to the [Board]” (the fourth element required for a preliminary injunction,
 
 see Blount Recycling, supra),
 
 however, is a question of fact not addressed by the trial court. “It is the function of a trial judge sitting as factfinder to decide facts where conflicts in the evidence exist.... The appellate courts do not sit in judgment of the facts .... ”
 
 Curtis White Constr. Co. v. Butts & Billingsley Constr. Co.,
 
 473 So.2d 1040, 1041 (Ala.1985). We will not do so here.
 

 TV. Conclusion
 

 Based on the foregoing, we agree with the Board that the trial court’s order denying a preliminary injunction was based on an erroneous understanding of the applicable law. Accordingly, that order is due to
 
 *694
 
 be reversed, and this cause is remanded for further proceedings consistent with this opinion.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, STUART, and BOLIN, JJ., concur.
 

 [1]
 

 . We assume that Inland Dam is the dam by which Inland Lake was created.
 

 [2]
 

 . Rhaly defined “turbidity” as "material that is suspended in water. It is an optical measurement of how cloudy the water is.” He stated that turbidity is created by sediment and gravel in the water.
 

 [3]
 

 . We are not presented with an argument by the Board that the essential nature of its rights in its real property would entitle it to injunctive relief to prevent an anticipated trespass to those rights even if the anticipated trespass were not expected to be recurring. Further, we are not clearly presented with an argument that the extent to which the Board will incur added water-treatment expenses in the future as a result of ILI's acts will not be discernible, or subject to proof, with a sufficient certainty to make the Board’s injury reparable at law. The Board does, however, cite
 
 Wells Amusement Co. v. Eros,
 
 204 Ala. 239, 240, 85 So. 692, 692-93 (1920), for the proposition that "the fact that no actual damages can be proved, so that in an action at law the jury could award nominal damages only, often furnishes the very best reason why a court of equity should interfere.” The Board does not develop an argument based on this authority, however, and we therefore will not pursue it for purposes of this opinion.
 

 [4]
 

 . In the hearing, the trial court, after stating that it believed "there could be more and better things done in respect to the erosion and sedimentation out there [at Inland Lake,]” observed: "I think all of you have been quite lucky as far as we have had this drought. This [runoff of sediment] could be worse. I think things should be implemented such as better controls for runoffs and such as that.”
 

 [5]
 

 .
 
 See also, Martin v. City of Linden,
 
 667 So.2d 732, 736 (Ala.1995) (slating that ”[tjhe primary reason for issuing an injunction is to prevent an 'irreparable injury,' i.e., an injury not redressable by an award of pecuniary damages in a court of law”);
 
 Triple J Cattle, Inc. v. Chambers,
 
 551 So.2d 280, 282 (Ala.1989) (same).