53 So.2d 847

### INGALLS IRON WORKS CO. v. INGALLS.
6 Div. 195.

Supreme Court of Alabama.
June 30, 1951.

D. W. Strickland and Lange, Simpson, Robinson & Somerville, Birmingham, for appellant.

Chas. W. Greer and Francis H. Hare, Birmingham, for appellee.

BROWN, Justice.

The bill filed by appellant the Ingalls Iron Works Company, a corporation organized and existing under the laws of the State of Delaware with its principal office in the City of Birmingham, Alabama, is against appellee Robert I. Ingalls, Jr., one of its three stockholders. The bill seeks specific performance of an option contract executed by Robert I. Ingalls, Jr. to complainant on April 15, 1943, conferring the right on complainant to purchase and obligating the respondent to sell all of his stock then owned and subsequently acquired at a fixed price, and further seeks the advice and instruction of the court as to what if any right complainant has to use the stock delivered to it under the provisions of the option contract by the defendant "as trustee only for the purpose of this option" and so endorsed, which now has and holds as such trustee.

The respondent demurred to the bill on sundry grounds, among others, that the bill was without equity. On submission on the demurrer to the bill as last amended the court sustained the demurrer and further ruled that from anything appearing on the face of the bill, it could not be amended so as to give it equity, and entered a final decree dismissing the bill. From that decree the complainant has appealed.

This ruling can be upheld, if at all, only on the theory that the bill on its face shows that the event fixed by the option

for maturing the right of the complainant to exercise the option has not occurred.

The appellant's contention reduced to its final analysis is that for and in consideration of $1,000 paid to the stockholder and his wife by the complainant, said option conferred on it the absolute right, on its election, at all times during the life of the stockholder and for thirteen months after his death, for any cause satisfactory to it, on notice to him during his life, or in case of his death to his personal representative, to have said option specifically performed, without regard to the declaration of the facts and the declarations of the circumstances surrounding the parties and attending the execution of the contract stated in the preamble immediately preceding paragraph (1), embodying the operative provisions, and without the stockholder's consent and without voluntary action on his part.

The contention of the appellee, on the other hand, is that the intention of the parties must be gathered from the four corners of the contract interpreted in the light of the occasion which gave rise to the contract, the relation of the parties and the objects to be accomplished.

■■ These contentions call for an interpretation of said option contract in the light of the applicable law which looks to the situation of the parties at the time it was executed and for that purpose the court will place itself as nearly as possible in the position of the parties when the instrument was executed to ascertain the intention of the parties, the rights to be protected and the objects to be accomplished. Reference may be had to the state of facts as they existed when the instrument was made and to which the parties may be presumed to have had reference. Nettles v. Lichtman, 228 Ala. 57, 152 So. 450, 91 A.L.R. 1455. The rule of the cited case was applied in Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 192 So. 278 which cited with approval McGhee v. Alexander, 104 Ala. 116, 16 So. 148, 149, from which we reproduce the following: "Contracts must be interpreted in the light of the facts surrounding the parties when they were made. There cannot be a departure

from the words of a written contract they must have their full import and force. But to arrive at the true sense in which the parties employed them, courts of necessity consider the occasion which gave rise to the contract, the relation of the parties, and the object to be accomplished. Pollard v. Maddox, 28 Ala. 321. As is said by Bishop: 'The parties speak in their contract from the fountain of their mutual knowledge, and if we would properly interpret their words, we must put ourselves exactly in their position, and know just what they mutually know, with neither addition nor abatement.' Bish. Cont. § 370. * * *"

■ This doctrine has been repeatedly reaffirmed. Olsson v. Nelson, 248 Ala. 441, 28 So.2d 186; Coley v. W. P. Brown & Sons Lmbr. Co., Inc., 251 Ala. 235, 240, 37 So.2d 125. And in Williams v. Johns-Carroll Lumber Co., 238 Ala. 536, 192 So. 278, it was observed: "* * * the rule of law is well settled and familiar, that different writings, executed at the same time and relating to the same subject-matter, will be construed as one instrument. The intention of the parties controls, and is to be gathered from the writings to which their stipulations and agreements may be referred.",—citing Kelly v. Life Insurance Clearing Co., 113 Ala. 453, 21 So. 361, 364.

The appellant's contention is based, in part at least, on the ruling that "Words of recital in an agreement do not have the force of contractual stipulations. Generally if the recitals in a contract are clear and the operative part is ambiguous, the recitals govern the interpretation; but if the recitals are ambiguous and the operative part is clear, the operative part must prevail." 12 Am.Jur. 776, § 241. And the further contention is made that the recitals in the preamble are ambiguous and self contradicting, hence the court should only look to the operative provisions from the body of the instrument found in paragraph (1).—See 17 C.J.S., Contracts, p. 733. § 314, that "As a general rule, recitals in a contract will not control the operative clauses thereof unless the latter are ambiguous; but they may be looked to in deter-

mining the proper construction of the contract and the parties' intention."

"Recitals in a contract should be reconciled with the operative clauses, and given effect, so far as possible; but where the recital is so inconsistent with the covenant or promise that they cannot be harmonized, the latter, if unambiguous, prevails. (Citing Wilson v. Towers, 4 Cir., 55 F.2d 199; Bellisfield v. Holcombe, 102 N.J.Eq. 20, 139 A. 817; Williams v. Barkley, 58 N.E. 765, 165 N.Y. 48; First Nat. Bank & Trust Co. of Minneapolis v. U. S. Trust Co., 184 Wash. 212, 50 P.2d 904; Scott v. Albermarle Horse Show Ass'n, 128 Va. 517, 104 S.E. 842). In other words, recitals, especially when ambiguous, cannot control the clearly expressed stipulations of the parties; (Citing Chicago Daily News v. Kohler, 360 Ill. 351, 196 N.E. 445; Irwin's Bank v. Fletcher Savings & Trust Co., 195 Ind. 669, 145 N.E. 869; Hansbarger v. Hansbarger, 206 Mich. 281, 172 N.W. 577; Martin v. Rothwell, 81 W.Va. 681, 95 S.E. 189) and where the recitals are broader than the contract stipulations, the former will not extend the latter (Citing Las Alnimas [Animas] Consol. Canal Co. v. Hinderlider, 100 Colo. 508, 68 P.2d 564, 566; Great Western Oil Co. v. Lewistown Oil and Refining Co., 91 Mont. 146, 6 P. 2d 863, 866). * * * Where the language of the covenants or promises in a contract is more comprehensive than that of the recitals, the intent is to be ascertained from a consideration of the entire instrument (13 C.J. 538, Note 4)." 17 C. J.S., Contracts, p. 733, § 314.

The bill alleges in substance that said corporation is a closed corporation with three principal stockholders, Robert I. Ingalls, Sr. and his wife Mrs. E. G. Ingalls, the mother and father of the respondent, and the respondent, members of the same family.

The bill further alleges that the respondent owns 4,501 shares of stock and has been such owner since April 15, 1943, by previous unconditional gift from his father, Robert I. Ingalls, Sr., and that the total outstanding shares of stock amount to 15,-000 shares, some of which have been set up as the corpus of a trust for the protection and benefit of the respondent and his minor children.

Neither the stocks in said trusts nor the trustees named therein are involved in this litigation and have no interest herein.

The three principal stockholders above named on April 15, 1943, each for like consideration in said option contract and the mutual understanding of the parties and $1,000 paid by complainant, entered into three separate but substantially identical option contracts, granting to the corporation the right to buy the stock of such stockholder at a fixed price on the occurrence of the stockholder's retirement or death.

The contract signed by each of said stockholders is substantially in the following language.

"This Option, made this 15 day of April, 1943, by Robert I. Ingalls, Jr. and his wife, Eleanor Flick Ingalls (hereinafter called Stockholder and wife, respectively), with and in favor of The Ingalls Iron Works Company, a corporation organized and existing under the laws of the State of Delaware, (hereinafter called the Corporation).

"Witnesseth:

"Whereas, of the total of 15,000 shares of the issued and outstanding capital stock of the Corporation, Stockholder is the owner and holder of 4,501 shares representing a forty-five hundred and one fifteenth thousandths (4,501/15,000) interest in the Corporation as now evidenced by certificate as follows:

"Certificate No.   Shares
"——17——   —4,501—

"Whereas, the present successful status of the Corporation is entirely attributable to the painstaking efforts and splendid cooperation of the stockholders and it is the desire of the Stockholder that the splendid harmony and the continuity of management be not disturbed in the event of the retirement or death of the Stockholder, by the interest of the Stockholder in the Corporation passing to outside and disinterested persons; and

"Whereas, it is the *desire of the Stockholder upon his retirement or death* not

only to protect the remaining or surviving stockholders of the Corporation by insuring the return of all of his stock to the Corporation, at its election, but also to assure the remaining or surviving stockholders that *upon his retirement or death* his interest in the Corporation, as herein described, may be retired at the price and under the terms as hereinafter provided. [Italics supplied].

"Now, Therefore, in consideration of the premises and the sum of One Thousand ($1,000.00) Dollars cash in hand paid to Stockholder and his wife by the Corporation, the receipt whereof is hereby acknowledged, and in further consideration of the mutual undertakings and covenants of the parties hereto as hereinafter set forth, it is agreed:

"1. That at any and all times during the life of the Stockholder and for thirteen (13) months after his death, the Corporation shall have a right, exercisable by written notice to the Stockholder prior to his death or by written notice to the executors, administrators or other legal representatives of the Stockholder subsequent to his death, to purchase all or any part of the forty-five hundred and one fifteen thousandths (4,501/15,000) interest which the Stockholder now holds in the Corporation, as represented by 4,501 shares of stock and evidenced by Certificate No. 17, as aforesaid, and any renewals or reissues thereof and said stock's pro rata proportion of any dividends declared on the issued and outstanding stock of the Corporation in the form of additional stock in the Corporation. In the event the Corporation shall elect to purchase all of the interest and stockholdings of the Stockholder in the Corporation, as evidenced by said Certificate No. 17 and any certificates evidencing any renewals or reissues thereof and dividends declared thereon in the form of additional stock in the Corporation, then the Corporation shall pay therefor (a) the aggregate sum of Two Million One Hundred Twenty thousand and no/100————($2,120,000.00)———— Dollars, plus (b) the amount of cash dividends which have then been declared thereon but be unpaid. In the event, however, that the Corporation shall elect to purchase only part of the interest of the Stockholder in the Corporation, as hereinabove described, then the Corporation shall pay for the part so purchased (a) an amount which bears the same ratio to the said aggregate sum of $2,120,000.00————as the part so purchased bears to the entire interest of the Stockholder in the Corporation as described and referred to in this paragraph 1, plus (b) the amount of any cash dividends which shall then have been declared on the part so purchased but be unpaid. Any such purchase, if made, shall be upon the terms and conditions herein contained.

"2. That the stock certificate described in paragraph 1 hereof and all certificates evidencing any renewals of reissues thereof and all certificates evidencing any additional stock issued as dividends on the said interest of the Stockholder in the Corporation, shall be endorsed as follows:

" 'This stock certificate is subject to an option to purchase dated April 15, 1943, in favor of The Ingalls Iron Works Company.'

"That the Stockholder agrees to assign and deliver, concurrently with the execution and delivery of this Option said stock Certificate No. 17, properly endorsed, to the Corporation, *as Trustee only, for the purpose of this Option.* Stockholder will and shall likewise assign and deliver to the Corporation, *as Trustee only,* promptly as and when issued, all stock certificates evidencing any renewals or reissues of said stock Certificate No. 17 and all certificates evidencing any additional stock issued by the Corporation as dividends on the said interest of the Stockholder in the Corporation, *for the purpose of this Option and endorsed as above prescribed.*

"3. That the stock owned by Stockholder and subject to this Option shall be voted by him and he shall receive all dividends declared and paid thereon and other rights accruing thereunder during his natural life, and, after his death, said stock shall be voted by his legal representatives, who shall receive all dividends declared and paid thereon and other rights accruing thereunder until such time as the option granted herein shall have been exercised, if

the same be exercised, and the purchase pursuant thereto shall have been completed; provided, however, that all dividends paid in the form of additional stock in the Corporation shall, promptly as and when received, be assigned, endorsed and delivered to the Corporation, as Trustee, for the purposes of this Option as provided in paragraphs 1 and 2 hereof and the full consideration therefor is included within the consideration as provided in said Paragraph 1.

"4. That in addition to the option granted to the Corporation as provided in paragraph 1 hereof, the Corporation shall have the right, exercisable by written notice at any time within the time provided in paragraph 1 hereof, to repurchase from the Stockholder or his executors, administrators or other legal representatives all or any part of any new stock (but such renewals or reissues of the present stock owned by the Stockholder or any additional stock issued as dividends thereon as are included within the option granted to the Corporation under paragraph 1 hereof, shall not be construed as new stock) which may be hereafter issued by the Corporation and purchased by the Stockholder, whether purchased by him pursuant to any rights accruing to him as a stockholder of record of the Corporation or otherwise; such purchase, if made, to be at and for the same price per share paid therefor by the Stockholder, plus the amount of any cash dividends which shall have then been declared thereon but be unpaid, and such purchase, if made, shall, except as provided in this paragraph 4, be subject to all other terms and provisions of this Option. The certificates evidencing any stock which may be acquired by the Stockholder as provided in this paragraph 4 shall promptly, when and as received by the Stockholder or his executors, administrators or other legal representatives, be assigned, delivered, endorsed and held as provided in Paragraph 2 hereof and shall, except as provided in this paragraph 4, be subject to all other provisions of this Option.

"5. That in the event the Corporation shall pursuant to the terms hereof, elect to purchase all or any part of the interest of the Stockholder in the Corporation, as aforesaid, it shall pay over the purchase price therefor, as provided in paragraph 1 hereof or paragraph 4 hereof, as the case may be, to the Stockholder or the executors, administrators or other legal representatives of the Stockholder, as the case may be, and the Corporation, as Trustee, shall thereupon transfer and deliver the certificates evidencing the interest of the Stockholder in the Corporation so purchased to the Corporation, free and clear of all liens and claims of any persons whomsoever.

"6. That to assure the Stockholder that the Corporation will be able to carry out the terms hereof, should the option herein granted be exercised by the Corporation as herein provided, the Corporation has caused the life of the Stockholder to be insured in the amounts set forth in Schedule 'A' attached hereto and made a part hereof, each of which policies has been made payable to the Corporation. The Corporation may obtain further and additional insurance on the life of the Stockholder for the purposes herein expressed and, in such event, the policies shall be added to and made a part of said Schedule 'A' with the same force and effect as if originally included therein.

"7. That the Corporation shall pay all the premium deposits on the insurance policies referred to in paragraph 6 hereof promptly as they become due, and shall, so long as any interest of the Stockholder in the Corporation is subject to the terms of this Option, continue all of said insurance policies in full force and effect.

"8. That all rights under the said policies, such as, but not limited to, the right to dividends, loans, surrender, and change of beneficiary, shall be reserved to the Corporation.

"9. That upon the death of the Stockholder the Corporation shall immediately make claim for and collect the net proceeds of the policies of insurance, of which it is then the Owner, covering the life of the Stockholder and hold the proceeds in a separate fund *as Trustee* (except as to an amount of such proceeds as shall be equal in value, as herein fixed or determinable, of any part of said interest of the Stockholder in the Corporation which shall have been theretofore purchased and paid for or

released and freed from the terms of this Option, as herein provided) subject to the following conditions:

"(a) In the event the Corporation shall elect to purchase all or any part of said interest of the Stockholder as herein provided, then the Corporation shall apply the net proceeds of said policies or such amount thereof as shall be required, against the purchase of such of the said interest as the Corporation shall elect to purchase at the price fixed or determinable as provided in paragraph 1 hereof or paragraph 4 hereof, as the case may be.

"(b) At such time prior to the expiration of the time allowed in paragraph 1 hereof for the purchase of said interest of the Stockholder in the Corporation as the Corporation shall give notice of its decision to release and free from the terms of this Option any of said interest, then such amount of the said insurance proceeds as shall be equal to the value as fixed or determinable, as herein provided, of the interest so released and freed shall become the property, absolutely of the Corporation free of any trust.

"(c) At the expiration of the time allowed in paragraph 1 hereof for the purchase of said interest of the Stockholder in the Corporation, all the said insurance proceeds, or such amount thereof as shall not have been applied to the purchase of any of said interest within such time, shall become the property absolutely of the Corporation free of any trust.

"(10) That in the event the Corporation shall, at any time prior to the death of the Stockholder, give written notice to the Stockholder of its decision to release and free from the terms of this Option all or any part of said interest of the Stockholder, then, and in such event, the Stockholder shall have a right, exercisable by written notice to the Corporation to take over not to exceed an amount of said insurance policies on his life, as described in Schedule 'A' hereto attached and such further and additional insurance policies as may hereafter be added to said Schedule 'A', as shall be equal in value, as herein fixed or determinable, to the interest so released and

freed from the terms of this Option, by and upon paying to the Corporation the full cash value of such policies so taken over as of the date of such payment and the full amount of all unpaid dividends thereon as shall have accrued to such date: provided however that the right to give to the Stockholder as contained in this Paragraph 10 shall in any and all events terminate at the death of the Stockholder, irrespective of whether or not the Stockholder shall have, prior to his death, given notice of his election to exercise such right, unless prior to his death he shall have actually and physically paid over to the Corporation the full cash value of such policies and the full amount of all accrued and unpaid dividends thereon, as aforesaid.

"11. That this Option shall terminate upon the bankruptcy, insolvency or dissolution of the Corporation.

"12. That this Option shall be binding and inure to the benefit of the parties hereto, their heirs, executors, administrators, successors and assigns and shall be irrevocable by the Stockholder.

"Any option or options heretofore given by the Stockholder and his wife to the Corporation (other than such repurchase rights as the Corporation may have pursuant to law or the provisions of its constitution and by-laws or certificates evidencing the stock herein described or referred to) to purchase any interest of the Stockholder in the Corporation are hereby, by mutual consent, rescinded and withdrawn and shall be of no force and effect whatsoever.

"In Witness Whereof, the said Robert I. Ingalls, Jr. and his wife, Eleanor Flick Ingalls, have hereunto set their hands and seals and The Ingalls Iron Works Company, a corporation, has caused this instrument to be executed and its corporate seal hereunto affixed, this the day and year first above written.

"Attest:
"/s/ Clyde C. Guepner
"Asst. Secy.
"(Seal)"

"/s/ Robert I. Ingalls, Jr.
(L.S.)
"/s/ Eleanor Flick Ingalls
(L.S.)
The Ingalls Iron Works Company
"By /s/ M. F. Pixton, Secretary and Treasurer."

The bill avers that the respondent was joined in the execution of said contract by Eleanor Flick Ingalls as his wife; that Robert I. Ingalls, Jr. and Eleanor Flick Ingalls were heretofore legally divorced on the 26th day of June, 1947, and that said Eleanor Flick Ingalls now has no interest in the subject matter of this litigation.

"Complainant avers that in and by said contract of April 15, 1943, the parties thereto made The Ingalls Iron Works Company *a bailee of and a Trustee for that certain Certificate,* mentioned in said contract, numbered 17 for four thousand five hundred and one (4,501) shares of the capital stock of The Ingalls Iron Works Company, a true and correct copy of which Certificate showing the face and reverse sides thereof is hereto attached, marked Exhibit B and made a part hereof for all purposes. Complainant avers that said Certificate Numbered 17 was by the respondent delivered to The Ingalls Iron Works Company as Trustee on the date of the execution of said contract, viz.: the 15th day of April, 1943, and Complainant, as Trustee as aforesaid, has held said certificate continuously since that date and *is now in possession thereof, in the exact form and condition in which it was delivered to Complainant,* as Trustee, upon the execution of said contract." [Italics supplied.]

The bill avers that Robert I. Ingalls, Sr. is the founder of the business conducted by the Ingalls Iron Works Company and, by whatever corporate title designated, has been the chief executive officer of complainant from its organization up to the present time. He is now its President and the Chairman of its Board of Directors.

The bill avers that "on and for a while prior to April 15, 1943, the Respondent held the office of. President and also that of Vice Chairman of the Board of Directors and Director of the Complainant Corporation and continued in said several capacities until, towit, the 15th day of May, 1948. On said date the chief executive officer of Complainant, for valid and proper reasons, relieved the Respondent of all duties and responsibilities as an officer and employee of Complainant, and on said date the Respondent ceased and since has continuously failed to render any service to the Complainant corporation either as President, Vice Chairman of the Board of Directors or Director, or as an employee or in any other capacity whatsoever. The severance of Respondent's connection as officer and employee of Complainant corporation as aforesaid was ratified, adopted and confirmed by action of the Board of Directors of the Complainant corporation on, to-wit: the 9th day of November, 1948, in a formal resolution of said Board duly and legally adopted, a true and correct copy of which is attached hereto, marked Exhibit C, and made a part hereof for all purposes. Complainant further avers that the Respondent's term as a Director of Complainant corporation, which he was serving when his other connections with Complainant corporation were terminated, expired normally on, to-wit: the 11th day of January, 1949, but a regular meeting of the stockholders of the corporation not being held on said date, the Respondent held over as such director until, towit: the 26th day of February, 1949, when the regular annual meeting of the stockholders of the corporation failed to reelect Respondent to the office of Director. He has not been since said date, was not on July 5th, 1950, and is not now an officer, agent, servant or employee of Complainant corporation, renders no service to it and draws no compensation from it and in his individual and personal capacity has no official or other connection therewith except that arising under and by virtue of his interest in the Certificate of Stock attached hereto and identified as Exhibit B.

"Respondent has received all dividends that have been declared on the stock evidenced by said Certificate No. 17 which were declared and payable prior to the date of the filing of this bill. Dividends have, however, heretofore been declared on said stock payable hereafter in the additional sum of towit, Eleven Thousand Two Hundred Fifty-two and 50/100 ($11,252.-20). There have been no stock dividends paid by Complainant since the execution of said contract of April 15, 1943, and there have been no renewals or reissues of said

Certificate Number 17, nor has Respondent purchased or acquired any new or additional stock in Complainant corporation since the execution of said contract.

"Complainant avers that heretofore, by appropriate corporate action, to secure to itself the harmony of management and the other benefits sought to be secured to Complainant by the Contract of April 15, 1943, it duly and legally elected to exercise its right to purchase and acquire the stock interest of Respondent in Complainant corporation covered by and subject to the terms of said contract, said interest being that evidenced by Certificate No. 17 aforesaid. It gave written notice of such election to Respondent on July 5th, 1950. On the date and occasion of giving such notice Complainant, pursuant to Paragraph 5 of said contract of April 15, 1943, offered and made diligent effort to pay over to Respondent the price of his said stock interest as fixed and determined by said contract, viz., $2,131,252.50. The Respondent refused to accept said payment. Complainant then and there made legal tender to Respondent of said price in lawful money of the United States and Respondent declined to accept such tender. Complainant now holds said money so tendered for the account of Respondent and is ready, able and willing to make payment thereof to Respondent at any time required by him or directed by this Court.

"Complainant avers that it now holds said Certificate of Stock Number 17 as Trustee by reason of the voluntary act of Respondent and at the request of Respondent and pursuant to an act done by Respondent in performance of his obligations under the contract of April 15, 1943. Respondent now refuses further to abide by the terms of said contract and repudiates the same. Respondent's refusal to accept payment of the purchase price of the said stock creates a situation in which Complainant, as such Trustee, is uncertain of its duties and responsibilities and in which Complainant in its private and non-fiduciary capacity and as a claimant to said stock seeks the determination by this Court of its rights under said contract of April 15, 1943, and a construction and declaration of the

meaning of said instrument now in controversy between the parties hereto. Complainant holds possession of said Certificate of Stock solely by reason of its duty as Trustee as aforesaid and now submits the same to the direction, orders and instructions of this Court.

"Complainant in its capacity as Trustee as aforesaid invokes the general equity powers of this Court and its specific powers under Section 159, Title 7, Code of 1940, to direct and instruct Complainant in the further discharge of its duties as Trustee under said instrument of April 15, 1943, under the circumstances brought into existence by the offer to purchase made by Complainant on July 5, 1950, and now prevailing. It specifically needs and requests the instructions and directions of the Court as to whether Complainant in its private and non-fiduciary capacity is entitled to take possession of said certificate of stock and use and enjoy the rights, privileges and powers flowing from ownership thereof or whether same should continue to be held in physical custody of Complainant as Trustee or should be surrendered to Respondent or any other, on order or direction of the Court. Complainant, in each capacity in which it brings this suit, submits itself fully to the orders and directions of the Court.

"In its capacity as a contracting party to the contract of April 15, 1943, and in its private and non-fiduciary capacity Complainant shows the Court that a present justiciable controversy exists between itself and the other party to said contract in that Complainant is ready, able and willing and desires to abide by said contract and has tendered performance thereof and stands ready to accept the benefits thereof. The Respondent, however, contends that he is under no legal obligation to accept said tender and to permit the purchase by the Complainant of said stock under said contract. And Respondent repudiates said contract and contends that the same is not binding on him and is void.

"And Complainant offers to do equity."

The complainant prays that the court take jurisdiction and determine the rights and obligations of the parties under the contract of April 15, 1943; determine and declare

whether and upon what conditions the said stock should be transferred to the complainant as the purchaser thereof; determine and declare what rights and obligations the respondent has with respect to said stock; direct and instruct complainant as to what are its duties and obligations as Trustee under said contract of April 15, 1943; Determine and declare the duties and responsibilities of complainant as to the transfer or other disposition of said certificate of stock No. 17; determine and declare whether or not complainant is entitled to the specific performance of said contract of April 15, 1943, and if so order, adjudge and decree that upon the payment of the purchase price of said stock the title and ownership thereof shall vest in complainant, and for general relief.

Attached to the bill of complaint as Exhibit C is a copy of the minutes of the meeting of the Board of Directors of the Ingalls Iron Works Company held on November 9, 1948, at which the following resolution was adopted:

"Be it Resolved that it is the opinion of this Board that the filing of the suit by Robert I. Ingalls, Jr., et al as complainants vs. Robert I. Ingalls, Sr., respondent, in the Circuit Court of Jefferson County, Alabama, in Equity No. 76919, is harmful to the best interests of this corporation;

"That this corporation has heretofore employed as its General Counsel on a full-time basis Donald W. Strickland, and said Donald W. Strickland was functioning as such General Counsel at the time of the filing of the aforesaid suit and for a long time prior thereto, and had general charge of all litigation on the part of the corporation and no officer, agent, or employee of the corporation has or had authority to institute litigation on behalf of the corporation without consultation with the said General Counsel;

"That the corporation furthermore retained on an annual retainer basis counsel at Birmingham, Alabama, viz, Messrs. Lange, Simpson, Robinson & Somerville, to aid, assist, and cooperate with the General Counsel of the corporation in and about all litigation to which the corporation is a party;

"That the chief executive authority of the corporation is and since the creation of the office has in fact been vested in the Chairman of the Board and not in Robert I. Ingalls, Jr. as President of the corporation;

"That the institution of the aforesaid suit was without the knowledge, approval or authorization of the Chairman of the Board, the corporation, or this Board of Directors or of the Corporation's General Counsel or of any other person authorized to act in the premises for the corporation;

"That it seeks to accomplish objectives contrary to the best interests of this corporation and its Board of Directors, and the bringing thereof by the Honorable Francis H. Hare, purporting to act as attorney for this corporation, is wholly without authorization, authority or approval of the corporation;

"Therefore, Be It Further Resolved that the General Counsel of the corporation and such associate counsel as he may deem wise to engage in the premises be and they now are instructed and directed as follows:

"1. That they take such steps as are necessary to secure the dismissal of the aforesaid suit which purports to have been instituted by this corporation;

"2. That they take such steps as are necessary to relieve this corporation from the unauthorized acts of the said attorney purporting to appear for it;

"3. That they take such steps as they deem necessary and proper to redress this corporation from all injuries and damages which it has suffered from said unauthorized act of said attorney;

"4. That they take such steps as they deem proper and expedient to redress all injuries and damages which this corporation may sustain or may have sustained by reason of any acts done or purported to have been done by Robert I. Ingalls, Jr. in and about instituting or causing to be instituted said unauthorized suit; and

"5. That said General Counsel be and he now is authorized and instructed on be-

half of this corporation to take such steps as he deems expedient and proper to oppose in all lawful ways the litigation aforesaid.

"The motion to adopt said resolution having been duly seconded by W. R. Guest, the Chairman called the roll and the following voted in favor of said resolution, viz: E. G. Ingalls, W. R. Guest, M. F. Pixton and the following voted against said resolution, viz: None. The Chairman thereupon declared the resolution duly and legally adopted.

"Thereupon the Chairman stated that the next matter to come before the meeting was the action of the Chairman of the Board in dispensing with the services of Robert I. Ingalls, Jr., as of May 15, 1948. The Chairman stated that he dispensed with the services of said Robert I. Ingalls, Jr. because said Robert I. Ingalls, Jr. failed to perform his duties as President and Vice Chairman and as an employee of this corporation in a proper and satisfactory manner and on various occasions prior to and immediately preceding said discharge, Robert I. Ingalls, Jr. acted in an insubordinate manner toward the Chairman of the Board in matters concerning the corporation's business and the duties of Robert I. Ingalls, Jr. Whereupon all facts and circumstances concerning the matter were fully discussed and considered, following which E. G. Ingalls moved the adoption of the following resolution, viz:

"Be It Resolved that, because of the failure of Robert I. Ingalls, Jr. to perform his duties as an employee of the corporation and the duties of the respective offices of President of the corporation and Vice Chairman of the Board of the corporation in a proper and satisfactory manner, the action of the Chairman of the Board in dispensing with the services of Robert I. Ingalls, Jr., as President and as Vice Chairman of the Board and as an employee or agent of the corporation as of the 15th day of May 1948, is hereby adopted, ratified and confirmed; and that the hostile and damnifying acts and conduct of the said Robert I. Ingalls, Jr. subsequent to May 15, 1948, now known to the Board render it in the interests of the corporation that the titles of President and Vice Chairman of the Board, respectively, of the corporation be withdrawn from said Robert I. Ingalls, Jr. and that his tenure of said respective offices cease and determine.

"Be It Further Resolved that it is the intended purpose of this Board that the said Robert I. Ingalls, Jr. be paid his salary whether payable to him as President or as Vice Chairman of the Board or as an employee of the corporation, up to and not subsequent to May 15, 1948; that the act of the Chairman of the Board in terminating his connection with the corporation as of that date be entered as now fully adopted, ratified and confirmed, and that said Robert I. Ingalls, Jr. is and shall no longer be after this time President or Vice Chairman of the Board of this corporation or its agent or employee in any capacity whatsoever and is without authority to act for or on its behalf either as officer or in any other capacity *except in his capacity as a member of the Board of Directors* and that the corporation do now call upon the said Robert I. Ingalls, Jr. to settle and adjust his accounts with this corporation.

"The motion to adopt said resolution having been seconded by W. R. Guest, the Chairman called the roll and the following voted in favor of said resolution, viz: E. G. Ingalls, W. R. Guest, M. F. Pixton and the following voted against said resolution, viz: None. The Chairman thereupon declared the resolution duly and legally adopted.

"Thereupon W. R. Guest nominated R. I. Ingalls, Sr. to the office of President of the corporation to serve in said office until his successor is elected and qualified. The nomination having been duly seconded by M. F. Pixton and there being no further nominations, ballot having been duly had and all the directors present having voted, the Chairman announced that said R. I. Ingalls, Sr. had been elected to the office of President of this corporation to serve until his successor is elected and qualified.

"There being no further business to come before the meeting, the same was duly ad-

journed. (Signed) R. I. Ingalls, Chairman; (Signed) M. F. Pixton, Secretary."

The bill was amended by setting out the relation of the other stockholders, Robert I. Ingalls, Sr. and Mrs. E. G. Ingalls and the fact that they had entered into the same option contract or substantially the same option contract as is set forth in the bill signed by the respondent, and alleges, among other things, "that payment to respondent of said sum of $2,131,252.50 would not cause any impairment of the capital of complainant" and adds to paragraph 10 of the bill the following averment:,

"10A. And complainant further shows the Court that it is advised by its counsel and complainant is otherwise informed and believes that it is its right forthwith and immediately to cause its appropriate officers to cancel the certificate of stock numbered 17 for 4501 shares of stock now in its possession and to hold said stock as the property of complainant, as provided by law. Complainant in its capacity as trustee, however, is informed and believes and therefore avers that respondent denies that complainant has the right to cancel and annul said certificate No. 17 and to treat said stock as the stock of complainant and denies that complainant as trustee in possession of said stock can do any act or take any steps further to divest respondent either of his legal or equitable title, if any respondent has, to said stock. And Complainant in its capacity as trustee as aforesaid desires to perform its duty as trustee in a true and lawful manner and is unable to determine its duty in the premises and specifically as such trustee needs and seeks the instructions of the Court as to its rights, duties and obligations as such trustee in the premises."

After due consideration of all the provisions of the contract, subject matter of this litigation, in connection with the recitals in the preamble, the circumstances in which the parties were dealing and the purposes to be accomplished, as evidenced by such recitals, and in connection with the other options executed by Robert I. Ingalls, Sr. and Mrs. E. G. Ingalls, the father and mother of the respondent contemporaneously with the contract under consideration, we are forced to the conclusion, looking through form to substance, as courts of equity must do, that the three active stockholders were dealing *inter sese* and for their mutual benefit. We are further of the opinion that the purpose of this dealing was to prevent their respective holdings from passing out of the family and the corporation was stake-holder and depository and a mere bailee to and in the accomplishment of their purpose by holding the stock in that capacity to prevent the delivery of the stock to anyone other than the other stockholders.

We are further of opinion when the option contract is considered from its four corners, the recitals therein that, "in the event of retirement" and "It is the desire of the stockholder upon his retirement or death not only to protect the remaining or surviving stockholders of the Corporation by insuring the return of all of his stock to the Corporation, at its election, but also to assure the remaining or surviving stockholders that upon his retirement or death his interetst in the Corporation, as herein described, may be retired at the price and under the terms as hereinafter provided," *import voluntary activity in accomplishment of his retirement.* Therefore the event contemplated to mature the option and warrant its specific performance has not come to pass.

We are also clear to the conclusion that said contract did not contemplate that the corporation through its controlling board or is executive officers by removing respondent from the corporate offices which he held at the time said options were executed, would mature the option by forced specific performance in a court of equity, nor authorize the corporation as stakeholder and trustee to convert the stock to the uses and purposes of the corporation or any one else.

The interruption of the *corporate entente cordiale* resulting from subsequent events and circumstances was without legal consequence in respect to maturing the option contract for specific performance, and the only right or duty resting on the bailee trustee was and is to hold the stock for the purposes and subject to the maturity of the option.

Therefore we concur with the conclusions expressed in the decree of the trial court that the bill is without equity in both of its aspects and that nothing appears on the face of the bill which suggests it could be given equity by amendment. Therefore the decree is due to be affirmed. It is so ordered by the Court.

Affirmed.

LIVINGSTON, C. J., and LAWSON, SIMPSON and STAKELY, JJ., concur.