PITTMAN, Judge.
Monty Ervin appeals from a judgment determining that he is liable to Jennifer Stackhouse for violations of the Alabama Uniform Residential Landlord and Tenant Act, § 35-9A-101 et seq., Ala.Code 1975 (“the Act”).
Stackhouse decided to lease an apartment (“the apartment”) from Ervin, who was the landlord. On December 27, 2007, she entered into a lease agreement styled “Transient Week to Week Lease Agreement” with Ervin and an entity named Southern Realty.[1] The lease agreement provided for a payment of $100 as a security deposit and weekly rent payments of $100. The lease agreement stipulated that each weekly rent payment of $100 included gas, electricity, water, garbage, and sewer charges, if any. The lease agreement also stated that Stackhouse had a monthly utility allotment of $100 and that if, at any time, the monthly utility bills totaled more than $100, Stackhouse would be responsible for the difference. In addition to other terms, the lease agreement also contained a pet-deposit fee of $300 per week for each pet kept indoors.
The record indicates that Stackhouse paid her weekly rent on January 25, 2008, for the week ending January 31. On January 26, 2008, one of Ervin’s secretaries entered the apartment and took pictures of two cats, food dishes, and a litter box in Stackhouse’s kitchen. Ervin’s secretary informed Stackhouse, both orally and in writing, that she was in violation of the pet-deposit provision of the lease agreement and that failure to pay $600 by the close of business on January 28, 2008, *668 would result in her electricity being disconnected. Subsequently, the electricity service to the apartment was discontinued on January 28, then reinstated, then discontinued again on January 31.
On February 1, 2008, Stackhouse filed a complaint against Ervin and Southern Realty in the Houston District Court seeking injunctive relief and monetary damages for Ervin’s refusal to provide electricity service to the apartment pursuant to the lease agreement and alleging that, as a result, she had been wrongfully evicted from the apartment. That action was docketed as case no. DV-08-60 and was transferred by subsequent motion to the Houston Circuit Court the following week, where it was renumbered as ease no. CV-08-60; a temporary injunction preventing Stackhouse’s eviction was entered after the transfer was completed. On February 4, 2008, Ervin filed an unlawful-detainer action, pursuant to § 6-6-310, Ala.Code 1975, in the district court seeking to recover possession of the leased premises because, he claimed, Stackhouse was in violation of the pet-deposit provision of the lease agreement; that action was docketed as case no. DV-08-127. Beginning sometime during the month of February and continuing until March 14, 2008, Stackhouse was incarcerated on unrelated charges. Subsequent to Stackhouse’s arrest, the apartment was burglarized and vandalized; Stackhouse’s mother testified that someone in Ervin’s office had called her to come and collect any family belongings in February before Ervin boarded up the apartment to prevent further damage.
Although Stackhouse had received a preliminary injunction to prevent her eviction from the apartment, the circuit court dissolved that injunction on March 3, 2008, and set the matter for a final hearing in April. The following day, the district court conducted an ore tenus proceeding on Ervin’s unlawful-detainer complaint, and that court took the matter under advisement without issuing a writ of possession. Subsequently, on March 13, 2008, the district court entered a judgment in favor of Stackhouse, in which that court stated, in pertinent part, “that the lease term authorizing [Ervin] to ‘cut off the utilities upon [Stackhousej’s failure to pay rent is an unlawful self-help eviction or ouster of the tenant by the landlord and is against public policy.” No writ of possession was issued.
On March 14, 2008, acting without a writ of possession, Ervin directed his employees to move all remaining personal property from the apartment and to stack those items on the street curb. The testimony was conflicting regarding whether any items were damaged during the move; at least two witnesses, including Stackhouse’s mother, testified that most of the items removed from the apartment had already been vandalized during the February burglary and were not further damaged by placement outside the apartment.
On March 18, 2008, Ervin appealed from the district court’s judgment to the circuit court; on appeal, that case was docketed as case no. CV-08-127. On July 7, 2008, following numerous continuances, the circuit court entered an order consolidating Stackhouse’s sole remaining claim, which sought money damages, with Ervin’s unlawful-detainer appeal. In addition, Stack-house filed a motion seeking a determination that Ervin was in contempt of court for having removed her personal property from the apartment following the district court’s determination that Ervin was not entitled to a writ of possession. After several delays, the consolidated cases were finally tried on April 23, 2009. At that ore tenus proceeding, both Ervin and Stack-house testified, and offered documentary evidence, regarding their contentions and *669 defenses as to the other party’s complaint. In addition, John Peacock, an employee of Ervin’s; Lawrence Wilson, a freelance photographer; and Cathy Campbell, Stackhouse’s mother, testified.
Peacock and Wilson testified regarding the events of March 14, 2008, the day that Ervin had caused Stackhouse’s belongings to be removed from the apartment. Campbell testified regarding her visit to the “ransacked” apartment in February 2008 after the burglary, which she confused with the physical eviction that had occurred on March 14, 2008. Peacock stated that he had been called to the apartment by Ervin to give Stackhouse access to the premises to remove her possessions from the property. Peacock was unable to identify Campbell as having been on the premises that day; moreover, he stated that Stackhouse had told him that she did not want any of the personal property but that she instead wanted to reoccupy the apartment. Wilson stated that he had been on the same street taking pictures to upload to the “Google Maps” Web site; he testified that he had thought the apartment appeared boarded up, which seemed unusual, so he had taken some pictures of the scene.
Stackhouse testified that she had never intended to vacate the premises, that she had told Ervin that she was consulting a lawyer, and that after she had informed Ervin that she would not leave he had disconnected the electric service to the apartment. Stackhouse denied having given Ervin written notice that she would vacate the premises at the end of January; she stated that she had never seen the document that Ervin claimed was her written notice that she would be vacating the apartment by the end of the day on January 31. She testified that one of Ervin’s secretaries had informed her that she needed to pay the weekly pet deposit or risk eviction. Stackhouse claimed that the animals in her apartment had been brought inside the apartment only one night because of cold weather.
Ervin testified that all the actions relied upon by the district court to determine that Ervin had unlawfully evicted Stack-house had occurred after the date and time that, he said, Stackhouse had notified Er-vin in writing that she would vacate the apartment. Furthermore, Ervin stated that all the actions he had taken were proper and in compliance with specific provisions of the parties’ lease agreement.
On June 28, 2009, the circuit court entered a judgment in favor of Stackhouse, stating, in pertinent part:
“Upon consideration of the testimony and evidence presented herein, the court finds that the lease agreement entered into between ... Stackhouse and ... Ervin is not a ‘transient lease agreement’ but rather a residential lease agreement which is subject to the application of [the] Act. The court further finds that the actions taken by [Ervin] in disconnecting [Stackhouse]’s power and removing [Stackhouse]’s possessions from the subject property, which actions were taken without the benefit of a writ of possession or other lawful court order, constitute an unlawful eviction.”
More specifically, the circuit court denied the relief sought by Ervin in his unlawful-detainer action. Although the circuit court specifically determined that Ervin was not in contempt of court, it did conclude that Ervin and Southern Realty were liable to Stackhouse in the amount of $1,200 for conducting a wrongful “self-help” eviction.[2]
Only Ervin has filed an appeal from that *670 judgment.[3] He asserts that the circuit court erred in failing to enforce the parties’ lease agreement as written, in applying the Act to the facts in this case, and in awarding damages to Stackhouse based upon a theory of wrongful eviction. On appeal, Ervin insists that the appropriate appellate-review standard is de novo and prays for reversal by this court because, he says, the circuit court improperly applied the law to the facts of this case.
We note that our standard of review is well established.
“ ‘ “[I]n ore tenus proceedings the trial court is the sole judge of the facts and of the credibility of witnesses,” and “we are required to review the evidence in a light most favorable to the prevailing part[y],”.... Driver v. Hice, 618 So.2d 129, 131 (Ala.Civ.App.1993); see also First Health, Inc. v. Blanton, 585 So.2d 1331, 1332 (Ala.1991) (reviewing evidence in the light most favorable to the prevailing party where the trial court’s judgment was entered after an ore tenus proceeding).’
“Architectura, Inc. v. Miller, 769 So.2d 330, 332 (Ala.Civ.App.2000).”
Enriquez v. Kokomo Props., LLC, 39 So.3d 198, 201 (Ala.Civ.App.2009). The bulk of Ervin’s brief centers on his contention that the Act in some manner violates the Alabama Constitution of 1901 and his liberty interest to freely make contracts. The record reflects that Ervin did not make any constitutional argument to the circuit court. Appellate courts “cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.” Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992); therefore, we will not consider that aspect of Ervin’s appeal.
Ervin also contends that the circuit court erred in failing to enforce the terms of the lease agreement and in determining that the lease was governed by the Act. At trial, Ervin insisted that the lease was a “transient lease” that fell outside the parameters of the Act, specifically citing the exclusion contained in § 35-9A-122(4), Ala.Code 1975, that “transient occupancy in a hotel, motel, or lodgings” is not covered by the Act. The Comment to that section is instructive and clarifies that the “Act applies to roomers and boarders but is not intended to apply to transient occupancy” and that “[i]n many jurisdictions transient hotel operations are subject to special taxes and regulations.” In addition, the Comment notes that “[a]ll of the exclusions enumerated apply only to genuine, bona fide arrangements not created to avoid application of the Act and are subject to the test of good faith [codified at § 35-9A-142].”
Although Ervin insisted at trial that he was merely acting as a landlord of transient rooms to let, he also testified that several of his long-time tenants “had left” because of “problems” with having Stack-house as a tenant. Stackhouse, for her part, testified that she had wanted to lease the apartment on a weekly basis because, by doing so, she could avoid having to make utility deposits because those services were included in the weekly rent. Moreover, the combined testimony of Stackhouse and Campbell indicated that, although the style of the lease agreement contains the word “transient,” they believed the lease agreement was, in fact, a *671 residential-dwelling contract between a landlord and a tenant.
Courts generally enforce contracts as written. The Alabama Supreme Court has noted:
“ ‘[An appellate c]ourt has limited authority to deal with the enforceability of contract terms. It can nullify or reform a contract on the basis of fraud; it can also nullify or reform a contract to eliminate any unconscionable provisions or terms that violate public policy. As previously noted, a contract provision that violates public policy can be subsumed under the theory of substantive uncon-scionability....’ ”
Edwards v. Allied Home Mortg. Capital Corp., 962 So.2d 194, 211 (Ala.2007) (quoting Ex parte Thicklin, 824 So.2d 723, 732 (Ala.2002)). In addition, “ ‘the intention of the parties must be gathered from the four corners of the contract interpreted in the light of the occasion which gave rise to the contract, the relation of the parties and the objects to be accomplished.’ ” Gwaltney v. Russell, 984 So.2d 1125, 1133 (Ala.2007) (quoting Ingalls Iron Works Co. v. Ingalls, 256 Ala. 124, 127, 53 So.2d 847, 849 (1951)).
A thorough review of the lease agreement reveals the following provisions: Stackhouse was to pay a security deposit upon signing the lease agreement, Stack-house was encouraged to obtain renter’s insurance to protect her personal property, Stackhouse was to occupy the apartment as only a personal residence, and Stack-house was to pay an additional pet deposit if animals were allowed to live indoors. In addition, the lease agreement provided that Stackhouse had a $100 monthly utility allowance, and it stated that Stackhouse was responsible for any amount exceeding that allowance. None of those provisions would appear to apply to intermittent or transient lodgers, ie., residents for a few days. The Act was passed “to simplify, clarify, modernize, and revise the law governing the rental of dwelling units and the rights and obligations of landlords and tenants.” Ala.Code 1975, § 35-9A-102(b)(1) (emphasis added). The Act specifically applies to “landlord-tenant relations in residential properties.” Ala.Code 1975, § 35-9A-122, Comment. Based upon the provisions of the Act and our reading of the lease agreement, we conclude that the circuit court properly determined that the lease was covered by the Act.[4]
Having determined that the lease was governed by the Act, the circuit court could properly have concluded that Ervin had attempted to improperly evict Stack-house by discontinuing the electrical service to the apartment without first obtaining a writ of possession from a trial court. See Pieper v. American Sign/Outdoor Adver., Inc., 564 So.2d 49, 50 (Ala.1990); see also Moriarty v. Dziak, 435 So.2d 35 (Ala.1983), and Moss v. Hall, 245 Ala. 612, 18 So.2d 368 (1944). Although Ervin contends that he did nothing that was not authorized by the lease agreement, the fact that he failed to secure a writ of possession before discontinuing the electrical service to the apartment twice in January 2008 could properly have been deemed to constitute an unlawful self-help eviction.
Although the circuit court referenced the removal of Stackhouse’s property in its judgment, we agree with Ervin that Stack-house’s claim as to the removal of the personal property was not actionable in damages (albeit not for the reasons he has *672 argued on appeal); however, the circuit court’s assessment of $1,200 in damages was actually related to Stackhouse’s claim regarding the discontinuance of electrical service to the apartment. Relying on § 35-9A-407, Ala.Code 1975, Stackhouse’s attorney noted that, when utilities have been improperly disconnected, the tenant is entitled to damages in the amount of 3 months periodic rent (in this case, $100 x 4 weeks x 3 months = $1,200). Although Stackhouse had also requested $6,000 to replace her personal property, the circuit court did not award anything on that claim, and we deem it implicitly denied. Based upon the foregoing reasons and authorities, the circuit court’s judgment is due to be affirmed.
AFFIRMED.
THOMPSON, P.J., and BRYAN, THOMAS, and MOORE, JJ., concur.

. It is unclear from the record what type of entity Southern Realty is, why it was party to the lease, or what relationship, if any, it has to Ervin.

. See supra note 1.

. Although the notice of appeal was not filed until September 4, 2009, Ervin applied for and received an extension of time, pursuant to Rule 77(d), Ala. R. Civ. P., to file his notice of appeal. Thus, his appeal is timely.

. Even if the circuit court had not applied the Act to the lease, Alabama’s unlawful-detainer statutes would still apply to prevent Ervin from summarily discontinuing electricity service to the apartment without first obtaining a writ of possession. See Ala.Code 1975, § 6-6-310 et seq.